[No. 2564-3. Division Three. May 1, 1979.]

NELLIE M. SULLIVAN, ET AL, *Appellants,* v. GREAT AMERICAN INSURANCE COMPANY, *Respondent.*

*Halverson, Applegate & McDonald* and *David H. Putney,* for appellants.

*Nashem, Prediletto, Schussler & Halpin* and *Don W. Schussler,* for respondent.

McINTURFF, J.—This appeal concerns an arbitration proceeding entered into by the insureds and their insurer regarding uninsured motorist coverage and the modification of the arbitration award by the court in conformity with the policy limits.

On May 12, 1973, the insureds, Mr. and Mrs. Sullivan, were involved in an accident with an uninsured motorist, Edward Lopez. The Sullivans had uninsured motorist coverage under two insurance policies issued by the defendant,

Great American Insurance Co., (Great American). Each policy provided uninsured motorist coverage of $15,000 per person or $30,000 per accident plus $2,000 per person in medical payments, for a total coverage of $68,000. The parties negotiated a settlement under one policy but were unable to agree upon the amount to be paid under the second policy. The question of damages was submitted to arbitration as required by the terms of the policy.

Before initiation of the arbitration proceedings, Great American communicated to the Sullivans its belief that it would be improper to inform the arbitrator of the extent of insurance coverage.[1] The Sullivans made no effort to advise the arbitrator of the policy limits. A formal arbitration hearing was held, testimony was taken, and evidence was adduced. Thereafter, the arbitrator informed the parties of his conclusion by letter:

Gentlemen:

Hearing a case of this type makes one appreciate the problems which a jury must consider in arriving at a fair verdict. In light of all the testimony and the medical evidence submitted, I find damages as follows: For Nellie Sullivan, the sum of $38,000; for Jay Sullivan, the sum of $68,000.

. . .

/s/ Lonnie R. Sukow
June 7, 1977

Following receipt of the June 7 letter, the arbitrator was advised by Great American that the insurance policy in question afforded coverage of only $34,000. The arbitrator then wrote a second letter to the parties on July 6, 1977, in which he entered a "final award" in favor of the plaintiffs for $34,000, to be divided between them "as their interests

---

[1]A letter from Donald W. Schussler, attorney for Great American, to David H. Putney dated August 20, 1976, read in part:

". . . I wish to also make it clear that in my view, it is absolutely improper for the arbitrators to be advised as to the extent of insurance available or the amounts which have been paid. I believe that the only appropriate procedure is to simply present the evidence to the arbitrators and let them make their awards."

appear". This amount represented the balance of the uninsured motorist coverage which Great American had not previously paid to the Sullivans.

The Sullivans then commenced this action seeking confirmation of the arbitration award according to the terms of the arbitrator's letter on June 7 in the amount of $106,000. The Sullivans argued that Great American's conduct up to and during the course of the arbitration proceedings amounted to a waiver of the policy coverage limits. Thus, the insurer was alleged to be responsible for the entire amount of damages as determined by the arbitrator in the June 7 letter. The trial court found no waiver by Great American and held the arbitrator to be without power to enter an order in an amount greater than the policy limits, $34,000.

The Sullivans argue that Great American agreed to be bound by the terms of the arbitrator's decision; that it was incumbent upon Great American to limit its liability by establishing the policy limits in arbitration; that the arbitrator's letter of June 7 was a final decision; and thereafter, he was without jurisdiction to reduce the award.

The insurance policy contained the following provision respecting arbitration:

> If any person *making claim hereunder* and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to *the amount of payment which may be owing under this part,* then upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators *pursuant to this part.*

(Italics ours.)

■ An agreement for the submission of a dispute to arbitration defines and limits the issues to be decided. The authority of the arbitrator is wholly dependent upon the terms of the agreement of submission. The arbitration award must concern only those matters included within the agreement for submission and must not exceed the powers established by the submission.[2]

The language employed in the agreement to arbitrate—"making claim hereunder . . . the amount of payment owing under this part, . . . pursuant to this part"—strongly indicates that the parties intended to be bound by the terms of the uninsured motorist provisions of the policy. Since the policy coverage limits for uninsured motorist protection were a part of the submission agreement, the arbitrator was without authority to make an award in excess of the scope of uninsured motorist coverage, in this instance, $34,000. Hence, the trial court acted correctly when it confirmed the award for $34,000. There was no authority or basis for an award in excess of the policy limits.

■ Next, the Sullivans argue that the arbitrator's award on July 6, 1977, was made more than 30 days from the close of the arbitration proceedings, and, therefore, it is without legal effect under RCW 7.04.090.[3] We disagree. Arbitration took place on May 23, 1977. The arbitrator made his award on June 7, 1977—well within the 30–day limitation period of RCW 7.04.090. Thereafter, the arbitrator was informed of the policy limits. When, on July 6, 1977, the arbitrator

---

[2]R. Anderson, *Cyclopedia of Insurance Law* § 50:154, at 432 (2d ed. 1965); 5 Am. Jur. 2d *Arbitration and Award* § 137, at 619 (1962); 6 C.J.S. *Arbitration* § 68, at 278 (1975).

[3]RCW 7.04.090:

"If the time within which the award shall be made is not fixed in the arbitration agreement, the award shall be made within thirty days from the closing of the proceeding, and any award made after the lapse of such thirty days shall have no legal effect, unless the parties extend the time in which said award may be made or ratify any award made after the expiration of the thirty day period. Any extension of time or ratification of the award shall be in writing and signed by all parties to the arbitration."

changed the award to conform to the terms of the submission agreement, the insurance policy, he did not make another award in violation of RCW 7.04.090 but merely corrected the initial award. The July 6, 1977, letter while termed a final award, simply represented a reconciliation of the original award on June 7, 1977, with the terms of the submission agreement.

Finally, the Sullivans argue that by failing to inform the arbitrator of the extent of uninsured motorist protection under the insurance policy, Great American is now estopped from objecting to an award of damages in excess of the policy limits. The Sullivans contend that the limits on liability were thus extended to cover the award of $106,000.

On this subject our court has said:

> One may not, by invoking the doctrine of estoppel or waiver, bring into existence a contract not made by the parties and create a liability contrary to the express provisions of the contract the parties did make. The general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel.

*Carew, Shaw & Bernasconi v. General Cas. Co. of America,* 189 Wash. 329, 336, 65 P.2d 689 (1937).[4] In support of this rule, courts have reasoned that an insurance company should not be required by waiver or estoppel to pay for a loss for which it charged no premium. *See* Annot., *Insurance Coverage—Estoppel—Waiver,* 1 A.L.R.3d 1139, 1144 (1965). This rationale appears applicable to the present case. The insureds have failed to show how they have been prejudiced by the court's modification of the arbitration award. Thus, we find no error.

---

[4]*Van Meter v. Franklin Fire Ins. Co.,* 164 F.2d 325, 326 (9th Cir. 1947); *Fidelity & Guar. Fire Corp. v. Bilquist,* 99 F.2d 333, 335 (9th Cir. 1938).

248

Judgment of the Superior Court is affirmed.

MUNSON and ROE, JJ., concur.