**UNDERWRITERS AT LLOYDS and other London Underwriters Under Primary Policy No. A84/14660 and Excess Insurance Policies Issued to Denali Seafoods, Inc., on or about March 22, 1984, Plaintiffs,**

v.

**DENALI SEAFOODS, INC., Defendant,**

**Mary Scanlon, individually, and as the special administrator of the Estate of John F. Scanlon, Jr. and as the natural guardian of Leif Eric Scanlon, a minor; Lance Scanlon; Patrick Scanlon; and Erica Scanlon, Intervenors.**

No. C87–1756R.

United States District Court,
W.D. Washington,
at Seattle.

Oct. 27, 1989.

Order Amending Opinion
Jan. 19, 1990.

David Danielson, Danielson, Harrigan, Smith & Tollefson and Michael H. Williamson, Madden, Poliak, MacDougall & Williamson, Seattle, Wash., for plaintiffs.

James P. Moynihan, Bauer, Moynihan & Johnson, Seattle, Wash., for defendant.

Kurt Michael LeDoux, LeDoux & LeDoux, Kodiak, Ark., for Intervenors.

## MEMORANDUM OPINION

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court for final resolution after trial in this declaratory judgment action. Having heard testimony, observed the witnesses and assessed their credibility, and having reviewed the trial briefs and closing memoranda, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

This is a declaratory judgment action initiated by plaintiff Underwriters at Lloyds (hereinafter "Underwriters") to determine the scope of an indemnity marine insurance policy issued to Denali Seafoods, Inc. (hereinafter "Denali"). The action was precipitated by a wrongful death suit brought against Denali by the estate and heirs of John F. Scanlon, Jr. (hereinafter "Scanlon"), an employee of Denali.

Scanlon was employed by Denali aboard the Vessel Denali, a seafood processing boat. Scanlon was hired as a processor. There were four crew members hired for the boat—a skipper, mate, deck hand and engineer. There was conflicting testimony over whether or not Scanlon was considered part of the crew, centering on Scanlon's claimed performance of other duties besides seafood processing such as painting, cleaning, or loading supplies.

On April 1, 1984, Scanlon apparently tried to board the vessel. There was no gang-way to board the vessel and Scanlon fell in the ocean and drowned. Mary Scanlon, the ex-wife of John Scanlon and mother of their four children, brought a wrongful death action against Denali on behalf of Scanlon's estate and heirs in United States District Court in Anchorage, Alaska.

Denali had a Protection and Indemnity marine insurance policy issued by Underwriters. This type of policy typically provides coverage for the owner of a vessel for various risks including accidental death sustained by seamen working on the vessel. The complaint was worded as an action on behalf of Scanlon as a crew member.

Denali's attorney, James P. Moynihan, informed Michael H. Williamson of Madden, Poliak, MacDougall and Williamson, Underwriters' Seattle agent, in writing of the Scanlon lawsuit on August 11, 1987. Williamson had recently represented Underwriters in a prior lawsuit brought by employee Holly Berry against Denali. In that suit Underwriters defended the action under a reservation of right regarding non-coverage of Berry on the grounds that she was a processor.

Shortly after receiving the letter from Moynihan, Williamson contacted Moynihan by phone to discuss the lawsuit. There was conflicting testimony as to whether or not Scanlon's employment status as crew member or processor was discussed. There was also conflicting testimony over whether the previous Berry case was discussed as a comparison to the Scanlon lawsuit.

Underwriters initially agreed to provide a defense to Denali. Williamson, acting in his capacity as representative counsel for Underwriters, sent Moynihan a reservation of rights letter reserving the issues of late-notice and non-liability for punitive damages. The letter did not request any information as to Scanlon's work status aboard the vessel. Nor did it reserve rights for

non-coverage based on Scanlon's status as a processor.

On November 17, 1987, Williamson retained Anchorage attorney Clay A. Young of the firm Delaney, Wiles, Hayes, Reitman & Brubaker, to represent Denali on behalf of Underwriters in the Alaska court. Young made an entry of appearance in the case.

In addition to the Underwriters' policy, Denali had also purchased a $100,000 employers liability policy through Industrial Indemnity Insurance Company. Mr. Geoffrey Courtright of Industrial Indemnity agreed with Underwriters in late November or early December to share the expenses of the Scanlon litigation. Pursuant to Underwriters' request on November 27, 1989, Moynihan telefaxed to Williamson a copy of Scanlon's work file. In the file was a worker compensation report listing Scanlon as a processor. Underwriters maintained that this was the first notice they had of Scanlon's processor status.

On December 28, 1987, more than four months after Underwriters received initial notification of the Scanlon lawsuit, Underwriters withdrew the defense and initiated a declaratory judgment action against Denali denying coverage, based on the insurance policy's express exclusion of processors.

Denali was in bankruptcy by this point in time. Denali ultimately settled with Scanlon for the amount of the Industrial Indemnity policy and an assignment against Underwriters.

Underwriters brought the declaratory action in this court to determine the scope of Denali's insurance coverage in relation to Scanlon, predicated on whether or not Scanlon had assumed crew member status. Scanlon's estate and heirs intervened in the action, claiming that coverage existed 1) under the independent doctrines of waiver and estoppel, and 2) because of Underwriters' alleged breach of its contractual duty to defend Denali.

## II. LEGAL ANALYSIS

### A. Processor Status

 The court finds that Scanlon did not perform duties of requisite scope to place him in the status of a crew member. It is uncontested that the insurance policy provided coverage for only crew members and excluded processors. Therefore, on its face the policy does not include coverage for Scanlon.

### B. Duty to Defend

 Intervenors assert that regardless of Scanlon's status as a processor, Underwriters had a duty to defend Denali from Scanlon's suit. The long history of cases involving an insurer's duty to defend emphasize the paramount importance placed by courts on the rights of the insured to a defense of claims brought against them. See Windt, Insurance Claims and Disputes, 2d Ed., pp. 139–40. Absent an express clause to the contrary, there is a clear duty to defend an insured against any alleged claim that potentially falls within the scope of policy coverage. The duty to defend is determined from the face of the complaint. "The law is clear. An insurer's duty to defend arises when a complaint against its insured is filed and is to be determined from the allegations of the complaint." Travelers Ins. v. Christian Alliance, 32 Wash.App. 836, 839, 650 P.2d 250 (1982), citing National Steel Construction Co. v. National Union Fire Ins. Co., 14 Wash.App. 573, 575, 543 P.2d 642 (1975). In this case, the claim against Denali was for Scanlon as a "crew member", which on its face fell within the policy from Underwriters. Therefore, Underwriters had a duty to defend Denali at the outset.

The court finds that the marine insurance policy or indemnity policy in this case is subject to this broad duty to defend. Although the policy does not contain express language stating that the insurer will defend any potentially groundless, false or fraudulent claim, courts have found that more general policy language about defending claims was sufficient to establish the duty. See Okada v. MGIC Indemnity Corp., 795 F.2d 1450, 1453–54 (9th Cir. 1986); Cay Divers, Inc. v. Raven, 812 F.2d 866, 869 (3rd Cir.1987); Coastal Iron

*Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 585 (5th Cir.1986); *Michaels v. Mutual Insurance, Inc.,* 472 F.Supp. 26 (S.D.N.Y.1979).

■ The court further finds that Underwriters breached its duty to defend. Underwriters withdrew their defense in December, 1987, at the time of initiating their declaratory judgment action. Prior to this there was no offer of a reservation of rights letter to Denali on the question of coverage. Nor was there any evidence that Denali refused to allow Underwriters to continue representing them based on an understanding that there was such a reservation of rights.

■ The court must now address what penalty results from Underwriters' breach. There is general acceptance that "the measure of damages for a good faith, but unjustified, refusal by an insurer to defend is the costs and reasonable attorneys' fees incurred by the insured in defending himself or herself, including any attorneys fees incurred in connection with settling the claim, plus the consequential damages, if any, that the insured incurs as a result of the insurer's breach of contract." Windt, *supra,* pp. 202–3; *see also,* Appleman, *Insurance Law and Practice,* § 4691, p. 240.

■ In this case there are no such damages due to the fact that Industrial Indemnity paid all outstanding defense costs, and the court finds no prejudice to Denali causing any consequential damages. Intervenors have attempted to argue that beyond these damages, in Washington an insurer who breaches the duty to defend is liable for any potential settlement or judgment, up to its policy limits, regardless of whether or not coverage truly exists for the claim. This court does not accept Intervenors' view of the law on this subject.

The language of the Washington Supreme Court in *Greer v. Northwestern National Ins. Co.,* 109 Wash.2d 191, 203, 743 P.2d 1244 (1987), is instructive. In that case, the insured, relying on a Michigan decision, *Stockdale v. Jamison,* 416 Mich. 217, 330 N.W.2d 389 (1982), asked the court to award damages above the policy limits

for the underwriters' wrongful refusal to defend. The court refused:

> Furthermore, the *Stockdale* measure of damages violates the fundamental principle of contract damages that we mentioned at the outset of this section: an insured should be put in only as good a position as he would have occupied had the contract not been breached.... Accordingly, we decline to apply the *Stockdale* rationale. *Id.* 109 Wash.2d at 203, 743 P.2d 1244.

While the *Greer* case involved a claim that was found to be covered by the policy and an award outside the policy limits, the logic of the decision supports the conclusion that failure to defend a claim ultimately found *not* to be covered in the policy should not be subject to reimbursement within the policy limits. Any other result would put the insured in a better position than they were originally. Underwriters' breach should not provide for a "rewriting" of the policy contract to award insured more than their purchased coverage.

It is clear that Young's defense of Denali was at all times vigorous and complete. The court finds that Underwriters' withdrawal of defense in December did not cause any prejudice to Denali's case, nor did it cause any consequential damages to Denali in Denali's continuing settlement negotiations with Scanlon under Industrial Indemnity's defense.

Furthermore, since Industrial Indemnity paid all outstanding defense costs, the court finds that Underwriters owe no further damages to Scanlon based on its breach of its duty to defend.

*C. Estoppel and Waiver*

Intervenors also assert that coverage exists under the doctrines of estoppel and waiver. The doctrine of estoppel is distinct from waiver primarily in the element of prejudice to the insured.

> Waiver, either expressed or implied, has been defined as the voluntary and intentional relinquishment or abandonment of a known right. It is *unilateral* in that it arises out of either action or nonaction on the part of the insurer or its duly

authorized agents and rests upon circumstances indicating or inferring that the relinquishment of the right was voluntarily intended by the insurer with full knowledge of the facts pertaining thereto.

Estoppel, on the other hand, refers to a preclusion from asserting a right by an insurer where it would be inequitable to permit the assertion. It arises by operation of law, and rests upon acts, statements or conduct on the part of the insurer or its agents which lead or induce the insured, in justifiable reliance thereupon, to act or forebear to act *to his prejudice. Buchanan v. Switzerland General Insurance Co.*, 76 Wash.2d 100, 108, 455 P.2d 344, 349 (1969). (emphasis added)

Determining the potential existence of estoppel or waiver requires the court to make additional factual determinations based on the evidence and testimony of witnesses observed at trial. The court finds that when Williamson received information from Moynihan about the Scanlon lawsuit in August and September, Williamson did so as Underwriters' agent. The court further finds it more probable than not that Williamson had knowledge of the potential processor coverage issue at the onset of notice about the Scanlon lawsuit in August, 1987, that is, before November 24 when he received Denali's file on Scanlon.

Waiver

■ As described above, in the event an insurer concludes that a claim against the insured is one requiring a defense, it should send the insured a reservation of rights letter prior to assuming the insured's defense, or within a reasonable time thereafter, in which it informs the insured of the carrier's preliminary coverage position. "Absent such a letter, equivalent oral advice, or the prompt institution of a declaratory judgment action, which will have the same effect as a letter, the insurer may be precluded from later denying coverage." Windt, *supra*, p. 32.

Further, a reservation of rights letter must be sent when the insurer has only "knowledge of potential non-liability," Appleman, *supra*, § 4692, p. 297. There is no need for proof of non-liability before an insurer is obligated to notify the insured of any possible coverage problem. If an insurer chooses not to send a reservation of rights letter, or if the insured does not agree to defense by the insurer under such terms, the insurer must seek a declaratory action on the matter.

Additionally, WAC 284-30-370 "Standards for Prompt Investigation," requires every insurer to complete its investigation of a claim within 30 days of being notified of such claim unless such investigation cannot reasonably be completed within such time. Underwriters did not begin investigation of the "processor status" issue until late November.

■ The general rule of waiver according to most courts is that if an insurer conducts an insured's defense without timely reserving its right to deny coverage, it cannot later disclaim based on any policy defense as to which it was on notice at the time it assumed the insured's defense. However, this general rule has been narrowed by courts in situations where coverage is denied based on exclusions in the policy.

... Several courts have used the doctrine of waiver to create coverage that would not otherwise have existed by virtue of the terms of the policy's insuring clause or an applicable policy exclusion. The majority of courts, however, prohibit the use of waiver under those circumstances. They have held that coverage under an insurance contract cannot be created or enlarged by waiver.... Waiver is the intentional relinquishment of a known right and it is never an insurance company's intention to provide an insured coverage that was not purchased.

Windt, *supra*, p. 361-2.

■ Washington law follows this majority rule in stating that the terms and coverage of a policy may not be expanded through application of the doctrines of waiver and estoppel.

One may not, by invoking the doctrine of estoppel or waiver, bring into existence a contract not made by the parties and create a liability contrary to the express provisions of the contract the par-

ties did make. The general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon forfeiture of a policy, yet, under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel. *Sullivan v. Great American Insurance Co.*, 23 Wash.App. 242, 247, 594 P.2d 454 (1979) (quoting *Carew, Shaw & Bernasconi v. General Casualty Co.*, 189 Wash. 329, 65 P.2d 689 (1937)). In support of this rule, courts have reasoned that an insurance company should not be required by waiver or estoppel to pay for a loss for which it charged no premium. *Id.* [23 Wash. App.] at 247 [594 P.2d 454.]

An insurer may be estopped from relying on a policy defense such as late notice, lack of cooperation by the insured, or termination of the policy. These defenses are not related to the coverage content. But in this case, intervenors seek to alter the terms of the policy itself by in effect removing the policy exclusion of coverage for processors. This is the exact type of policy reformation prohibited by *Sullivan* and *Carew.*

Therefore, while Underwriters' conduct may appear to meet the requirements of the general waiver rule, Underwriters will not be required to indemnify a claim expressly excluded from the policy at issue.

Estoppel

█ No reservation of rights letter was offered or sent to Denali on the processor status coverage question. Further, investigation of this potential coverage issue was not begun within 30 days of notice, as required by WAC 284–30–370, "Standards for prompt investigation." Despite these facts, the court finds no evidence that Denali suffered any actual prejudice by Underwriters' withdrawal of defense. Prejudice will not be presumed. Without prejudice, estoppel cannot be used as a means to assert coverage.

*D. Consumer Protection Act Violation*

█ Finally, intervenors allege that Underwriters' violation of WAC 284–30–370 constitutes a violation of the Consumer Protection Act as well. The court finds no evidence for this claim.

WAC 284–30–300 states:

RCW 48.30.010 authorizes the commissioner to define methods of competition and acts and practices in the conduct of the business of insurance which are unfair or deceptive. The purpose of this regulation, WAC 284–30–300 through 284–30–410, is to define certain standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices.

It is true that WAC 284–30–370 "Standards for prompt investigation of claims", is contained within the Unfair Trade Practices section of the regulation. Underwriters did fail to complete, indeed initiate, investigation of the Scanlon claim within the required 30 days. However, no evidence has been introduced suggesting that Underwriters have committed this violation with such frequency as to indicate a general business practice. Therefore, the court finds that there was no violation of the Unfair Trade Practices regulation, and consequently no violation of the Consumer Protection Act.

NOW, THEREFORE, the court finds that the scope of coverage in defendant's policy did not extend to Scanlon as a processor, either on the face of the policy, or through the breach of plaintiffs' duty to defend, estoppel or waiver. Intervenors are to be awarded no damages as the result of this action.

### ORDER AMENDING MEMORANDUM OPINION

THIS MATTER comes before the court on plaintiffs' and intervenors' motions to amend the court's Memorandum Opinion. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. PLAINTIFFS' MOTION TO AMEND JUDGMENT

Plaintiffs Underwriters at Lloyds, et al., move the court to amend its Memorandum Opinion issued October 26, 1989, to resolve

an inconsistency with the court's oral ruling during trial. Specifically, plaintiffs point to page 723, col. 2, lines 46 and 47 of the Memorandum Opinion which states that Michael Williamson was acting in his capacity as representative counsel for Underwriters *and* Denali when he sent a reservation of rights letter to James P. Moynihan concerning the Scanlon case. Upon review of the case, the court agrees that the statement is incorrect as currently written, and should be amended. Page 723, col. 2, lines 44–47, of the Memorandum Opinion is therefore amended to read: "Williamson, acting in his capacity as representative counsel for Underwriters, sent Moynihan a reservation of rights letter...." *

## II. INTERVENORS' MOTION TO AMEND JUDGMENT

Intervenors' motion to amend the judgment is much more extensive. Intervenors move the court to amend the judgment to hold, (1) there was a waiver of coverage when Underwriters initiated a defense of Scanlon's action against Denali without doing so under a reservation of rights; (2) the penalty for plaintiffs' failure to defend is that they are barred from denying coverage; (3) Underwriters are liable to Scanlon for the damages incurred by Industrial Indemnity; (4) Underwriters acted in bad faith in the investigation of Scanlon's claim against Denali and denial of coverage, and as such, are barred from seeking any relief; (5) prejudice to Denali should be presumed and, alternatively, Denali did in fact suffer prejudice; and (6) there was a violation of the Washington Consumer Protection Act, even though there was no showing of the frequency of violations by Underwriters.

Intervenors have failed to bring forth any new evidence or arguments of law to convince the court to amend its earlier opinion on the questions of waiver, prejudice, bad faith, or the remedy for breaching a duty to defend. Nor have the intervenors made any showing to this court as to damages incurred by Industrial Indemnity.

The court agrees with both plaintiffs and intervenors that an isolated violation of the Consumer Protection Act (CPA) may, under certain circumstances, be a violation of the Act. The court does not find those circumstances to be present in this case. The Washington Supreme Court has set out standards which a private litigant must meet to successfully bring a CPA action. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wash.2d 778, 719 P.2d 531 (1986). Intervenors have not successfully brought forth evidence to meet the criteria set out in *Hangman Ridge* for establishing a CPA violation. The court will not amend its conclusion in the Memorandum Opinion that there was no violation of the CPA in this case.

THEREFORE, plaintiffs' motion to amend the judgment is GRANTED. Intervenors' motion to amend the judgment is DENIED.

* Editor's Note: The correction called for has been made in the memorandum opinion.