**UNDERWRITERS AT LLOYDS, and other London Underwriters Under Primary Policy No. A84/14660 and Excess Insurance Policies Issued to Denali Seafoods, Inc., on or about March 22, 1984, Plaintiffs–Appellees,**

v.

**DENALI SEAFOODS, INC., Defendant–Appellant,**

and

**Mary Scanlon, individually, and as the special administratrix of the Estate of John F. Scanlon, Jr., and as the natural guardian of Leif Eric Scanlon, a minor; Lance Scanlon; Patrick Scanlon; and Erica Scanlon, Defendants/Intervenors–Appellants.**

**No. 90–35204.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1991.

Decided Feb. 28, 1991.

Kurt M. LeDoux, LeDoux & LeDoux, Kodiak, Alaska, for defendants-intervenors-appellants.

David Danielson, Michelle Buhler, Danielson, Harrigan & Tollefson, Seattle, Wash., for plaintiffs-appellees.

Before WRIGHT, BRUNETTI and LEAVY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We consider how the law of waiver and estoppel applies in Washington when an insurance company breaches its duty to defend its insured.

## BACKGROUND

A detailed statement of facts may be found in the district court opinion, *Underwriters at Lloyds v. Denali Seafoods, Inc.*, 729 F.Supp. 721 (W.D.Wash.1989), *amended*, 1989 WL 163862, 1990 U.S.Dist. LEXIS 698. An abbreviated version follows.

In the spring of 1984, John Scanlon fell into the ocean and drowned, apparently while attempting to board the vessel Denali. He had been hired as a seafood processor by Denali Seafoods, which owned the vessel. In 1987, Mary Scanlon, his ex-wife and mother of their four children, brought a wrongful death action against Denali on behalf of Scanlon's estate and heirs. Denali's insurer, Underwriters at Lloyds, agreed to defend the action without reserving rights on coverage issues.

About a month after the answer to the complaint was due, Underwriters withdrew from the defense and instituted a declaratory judgment action asking the court to declare that the policy expressly excluded processors like Scanlon. The court agreed, rejecting arguments that Underwriters had either waived or was estopped from denying coverage. 729 F.Supp. at 725–27. The court also found that Underwriters breached its duty to defend Denali but declined to award damages. *Id.* at 725.

The Scanlons, intervenors in the declaratory judgment action, raise three arguments on appeal. First, they contend that the court erred in concluding that Underwriters could not waive a coverage defense. Second, they argue that Underwrit-

ers was estopped from asserting a coverage defense. Third, they claim the court erred in refusing to award damages for Underwriters' breach of its duty to defend.

## ANALYSIS

■ This suit was brought under the admiralty and maritime jurisdiction of the federal courts, but the parties agree the substantive law of Washington applies. We do not disturb the parties' assumption that state law controls where no relevant federal admiralty law exists. *See Kalmbach, Inc. v. Insurance Co. of State of Pa., Inc.*, 529 F.2d 552, 554–55 (9th Cir.1976).

### I. Waiver

The Scanlons argue that when Underwriters entered its appearance on behalf of Denali in the wrongful death action without reserving the right to contest coverage, it waived the right to contest coverage later. Underwriters responds that the Washington Supreme Court's decision in *Carew, Shaw & Bernasconi v. General Casualty Co.*, 189 Wash. 329, 65 P.2d 689 (1937), establishes that waiver is inapplicable when its effect is to expand coverage beyond policy terms. The district court agreed with Underwriters, relying on *Carew* and *Sullivan v. Great Am. Ins. Co.*, 23 Wash.App. 242, 594 P.2d 454 (1979). *See Underwriters*, 729 F.Supp. at 726–27.

■ Our analysis begins with the rule of law stated in *Carew:* "The general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet, under no conditions, can the coverage

or restrictions on the coverage be extended by the doctrine of waiver or estoppel." 65 P.2d at 692. The rationale is that an insurance company should not be required to pay for a loss for which it received no premium. *Saunders v. Lloyd's of London*, 113 Wash.2d 330, 336, 779 P.2d 249, 252 (1989).

Neither *Carew* nor its Washington progeny considered the question presented here: whether waiver applies when an insurer breaches its duty to defend.[1] The Scanlons argue that a well-defined exception to the general rule permits waiver where the insurer assumes the defense of an action without reserving rights. The leading treatises support their argument. *See* 16B J. Appleman, Insurance Law and Practice § 9090, at 590–91 (1981); 14 G. Couch, Cyclopedia of Insurance Law § 51:82 (2d ed. 1982); *see also* Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Assured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R.2d 1148 (1966 & Supp.1990). The question is whether the exception applies in Washington. The Washington Supreme Court has not addressed this question.

Two Washington courts have addressed waiver in the duty-to-defend context but have reached conflicting conclusions.[2] In *R.A. Hanson Co. v. Aetna Casualty & Sur. Co.*, 15 Wash.App. 608, 550 P.2d 701 (1976), Division Three of the Washington Court of Appeals assumed that waiver was applicable to an insurer that defended an

---

**1.** A leading treatise has concluded that the *Carew* court's statement of the general rule on the applicability of waiver and estoppel is overly broad: "The court, in this flat assertion, sounds extremely logical, but it is unequivocally wrong, if it entertained no mental reservations. There are many situations, which actually extend the coverage of the policy ..." 16B J. Appleman, Insurance Law and Practice § 9090 at 583 n. 5 (1981).

**2.** The Scanlons rely on two other cases, *Baxter v. Central W. Casualty Co. of Detroit*, 186 Wash. 459, 58 P.2d 835 (1936), and *Empire State Surety Co. v. Pacific Nat'l Lumber Co.*, 200 F. 224 (9th

Cir.1912), to argue that Underwriters waived its right to contest coverage. *Baxter* may be distinguished because it involved a breach of warranty issue, not a coverage issue. *See Carew*, 65 P.2d at 692 (distinguishing between breach of warranty and coverage issues; waiver available for former but not latter). *Empire State* is of questionable precedential value because there is some doubt that it applied Washington law and because it conflicts with a more modern Washington court of appeals decision in *Transamerica Ins. Group v. Chubb and Son, Inc.*, 16 Wash.App. 247, 554 P.2d 1080 (1976), *review den.*, 88 Wash.2d 1015 (1977) (discussed in text after this note).

action without reserving rights on coverage, but it found that the insurer's actions did not constitute a waiver. *Id.* at 613–14, 550 P.2d at 705. The court did not explain why it assumed waiver was applicable. The rationale normally invoked is that a conflict of interest arises when the insurer represents the insured in a lawsuit and simultaneously formulates a defense against the insured for noncoverage. *See, e.g., Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169, 1173 (5th Cir. 1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974).

In *Transamerica Ins. Group v. Chubb and Son, Inc.,* 16 Wash.App. 247, 554 P.2d 1080 (1976), *review denied,* 88 Wash.2d 1015 (1977), Division One refused to consider the insured's waiver argument, holding that an insurance company cannot waive policy coverage issues. *Id.* at 253, 554 P.2d at 1084 ("There is no question of waiver because if there was no coverage, [the insurer] had nothing to waive.") This holding is consistent with the theory that it is unreasonable to conclude that an insurer, merely by failing to send a reservation of rights letter, voluntarily elects to provide an insured with coverage the insured did not purchase. *See* A. Windt, Insurance Claims and Disputes § 2.08 (2d ed. 1988). Waiver, according to this view, should be restricted to instances where the insurer knowingly consents to some change, such as where it accepts premiums from a third party with the knowledge that the party is not the named insured. *See id.* at § 6.33.[3]

Because the issue before us has received conflicting treatment in the intermediate state courts of appeals, we are required to use our best judgment to predict how the Washington Supreme Court would decide it. *See Insurance Co. of the State of Pa. v. Associated Int'l Ins. Co.,* 922 F.2d 516, 520 (9th Cir.1990) (citation

omitted). We conclude that Washington's highest court would permit the application of waiver to preclude an insurance company from raising a coverage defense after it agreed to defend an action without reserving rights.[4] We further conclude that Underwriters did not waive its coverage defense here.

Waiver is the voluntary or intentional relinquishment of a known right. *Saunders,* 113 Wash.2d at 339, 779 P.2d at 254. Underwriters became aware of a potential coverage defense when it was notified of the wrongful death action in August 1987, but did not withdraw until December 1987. Its withdrawal apparently stemmed from its examination of Scanlon's work file in November 1987 and its subsequent reevaluation of his status as a processor. This sequence of events suggests that Underwriters' failure to reserve rights was an error or oversight rather than an intentional decision to waive a defense. *See R.A. Hanson,* 15 Wash.App. at 614, 550 P.2d at 705 (withdrawal by insurance company shortly after reevaluation of claim is logically consistent with conclusion of initial mistake, not waiver).

Absent substantial evidence of intent to effect a waiver, we conclude that Underwriters did not waive its right to contest coverage.

## II. Estoppel

Washington courts apply an estoppel analysis where an insurer breaches its duty to defend. *See R.A. Hanson,* 15 Wash. App. at 610, 550 P.2d at 703; *Transamerica,* 16 Wash.App. at 249, 554 P.2d at 1081. Waiver and estoppel are distinct doctrines meriting separate analysis. *Saunders,* 113 Wash.2d at 339, 779 P.2d at 254. Estoppel, unlike waiver, does not focus on the intent of the insurer; it arises as a matter of law to preclude an insurer from

---

**3.** We note that the *Carew* court adopted a very similar rationale when it held that waiver was applicable to forfeiture of coverage or breach of warranty issues, but not to policy coverage issues. *See Carew,* 65 P.2d at 692. The facts in *Carew* did not involve an insurer's breach of its duty to defend, however, so we do not find this rationale controlling here.

**4.** In the majority of cases an insurance company will not volunteer to provide coverage the insured did not purchase and a waiver argument will fail. We can envision circumstances, however, where an insurer would intentionally concede a coverage defense because it was influenced by other factors such as transaction or litigation costs.

asserting a right or defense when it would be inequitable to permit the assertion. *See id.* at 340, 779 P.2d at 255; *Buchanan v. Switzerland Gen. Ins. Co.,* 76 Wash.2d 100, 108, 455 P.2d 344, 349 (1969). The focus is on the insured's justifiable reliance and whether or not it was prejudiced by the insurer's actions. *Saunders,* 113 Wash.2d at 340, 779 P.2d at 255.

The district court concluded that Underwriters was not estopped from asserting its coverage defense because Denali suffered no prejudice after Underwriters withdrew. *Underwriters,* 729 F.Supp. at 727. The Scanlons argue that prejudice is conclusively presumed where an insurer breaches its duty to defend. Alternatively, they argue that even if it is not presumed, the facts warrant such a finding.

### A. Presumption of Prejudice

The Scanlons rely on *Transamerica* to argue that prejudice should be presumed. There, the insurer denied coverage after conducting a defense for 10 months. In concluding the insurer was estopped from denying coverage, the court said:

> As a matter of law and in the absence of extraordinary circumstances, 10 months is too long a period for counsel for [the insurer] to occupy the dual role. The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [the insurer] irrevocably fixed the course of events concerning the law suit for the first 10 months. Of necessity, this establishes prejudice.

16 Wash.App. at 252, 554 P.2d at 1083. The court's emphasis on the duration of the defense strongly suggests that prejudice is not conclusively presumed every time an insurer withdraws.

Underwriters relies on *R.A. Hanson* to argue that prejudice rarely is presumed.

There, the insurer withdrew two and one-half months after agreeing to defend the action without reserving rights. The court found that prejudice should not be presumed and required "substantial proof" that the insured would suffer actual prejudice. 15 Wash.App. at 610, 550 P.2d at 703. Prejudice would be presumed "[O]nly in extreme cases ..., as where the insurer claims noncoverage after judgment and surrender of all right of appeal, making actual proof of prejudice impossible." *Id.* The court concluded that a delay of two and one-half months did not present an extreme case. *Id.*

■ In synthesizing these two cases, we conclude that, except in extreme cases, actual prejudice must be proven in Washington to estop an insurer from asserting a coverage defense after it has breached its duty to defend. The *Transamerica* court appears to say that 10 months is simply too long to conduct a defense and suddenly deny coverage. It may be that this would qualify as an "extreme case" under *R.A. Hanson.* Our conclusion that prejudice is not conclusively presumed is bolstered by the fact that the *Transamerica* court explicitly discussed *R.A. Hanson* and did not disagree with its holding. *Transamerica,* 16 Wash.App. at 249–51, 554 P.2d at 1082.

■ Here, four months elapsed after Underwriters agreed to defend the action without reserving rights. Withdrawal occurred 49 days after the complaint was served and only 29 days after the answer was due. We conclude that Washington courts would not find this an extreme case. The Scanlons are not entitled to a presumption of prejudice.[5]

### B. Actual Prejudice

We must now determine if the district court erred in finding that Denali suffered no prejudice.[6] Estoppel is not favored by

---

**5.** Some courts have held that the insured is entitled to a rebuttable presumption of prejudice. *See, e.g., National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 356 S.E.2d 488, 493 (W.Va. 1987). Washington courts may wish to consider this standard in the future. We note, however, that the Scanlons' claims of prejudice fail under

either a rebuttable presumption or the standard of actual prejudice applied here. *See infra* p. 464–465.

**6.** The Scanlons make this argument on behalf of Denali because, as part of its settlement of the wrongful death action, Denali assigned its cov-

Washington courts, and the party who asserts it must prove every element by clear, cogent and convincing evidence. *In re Marriage of Sanborn*, 55 Wash.App. 124, 129, 777 P.2d 4, 7 (1989).

The factors we consider to determine whether an insured has been prejudiced by its insurer's withdrawal of defense include the insured's loss of a favorable settlement opportunity or defense, its inability to produce all testimony in support of the defense, its inability to produce any material witness, or withdrawal so near the time of trial that the insured is hampered in preparing its defense. *R.A. Hanson*, 15 Wash.App. at 611, 550 P.2d at 703–04. Courts also consider the conflict of interest that may arise if the insurer controls the litigation while simultaneously preparing a noncoverage argument for a later action. *See Transamerica*, 16 Wash.App. at 251–52, 554 P.2d at 1083.

This is an unusual case: when Underwriters withdrew, Denali was not forced to seek new counsel. It continued to be represented by an attorney appointed originally by Underwriters. Litigation expenses were paid by Industrial Indemnity, another insurer from which Denali had purchased a $100,000 employer's liability policy. The district court found that Mr. Young's representation "was at all times vigorous and complete." *Underwriters*, 729 F.Supp. at 725.

Because of the unusual circumstances, the Scanlons' claims of prejudice do not have much bite. There is no indication that the representation of Denali was compromised by a conflict of interest. Nor was Denali's defense prejudiced by the withdrawal. The Scanlons' claims of prejudice are either meritless or speculative. The mere possibility of prejudice is an insufficient basis upon which to predicate an estoppel. *Wilson v. Westinghouse Elec. Corp.*, 85 Wash.2d 78, 83, 530 P.2d 298, 301 (1975).

We affirm the finding that Denali was not prejudiced by Underwriters' withdrawal.

erage claim against Underwriters to the Scan-

### III. Damages for Breach of Duty to Defend

The Scanlons argue that Washington law mandates damages for Underwriters' breach in an amount equal to their $70,000 settlement with Industrial Indemnity. Instead, the district court relied on the well-accepted measure of damages for a good faith, but unjustified breach: the costs and reasonable attorneys' fees incurred by the insured in defending itself plus consequential damages that the insured incurred as a result of the breach. *See* Windt, *supra* § 4.31; *see also Lawrence v. Northwest Casualty Co.*, 50 Wash.2d 282, 287, 311 P.2d 670, 673 (1957) (insurer responsible for reasonable expenses incurred by insured in defending action). No damages were awarded because Industrial Indemnity paid all outstanding defense costs and because Denali suffered no prejudice that would cause consequential damages. *Underwriters*, 729 F.Supp. at 725.

We agree with the district court that damages beyond those taken into account by the traditional standard are foreclosed by the contract damages rationale applied in *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wash.2d 191, 203, 743 P.2d 1244, 1250 (1987). *See Underwriters*, 729 F.Supp. at 725. The logic of *Greer* supports the conclusion that an insurer's failure to defend a claim ultimately found not to be covered by the policy should not be subject to reimbursement within the policy limits. The cases relied on by the Scanlons to discredit this reasoning are either distinguishable or inapposite. We affirm the district court's refusal to award damages.

## CONCLUSION

We conclude that Washington law permits the application of waiver to preclude an insurance company from raising a coverage defense after it agreed to defend an action without reserving rights. Because the Scanlons failed to present evidence that Underwriters intended to waive its cover-

lons.

age defense, we reject their waiver argument.

We conclude further that an insured must show that it was actually prejudiced by its insurer's withdrawal of defense to prove the insurer is estopped from raising a subsequent coverage defense. Washington courts will presume prejudice in extreme cases, but this is not such a case. The Scanlons had the burden of showing actual prejudice.

They failed to carry that burden. Denali was represented capably by counsel for another company that paid all litigation expenses. Denali suffered no prejudice and Underwriters was not estopped from denying coverage. For the same reason, Denali suffered no damages when Underwriters breached its duty to defend.

AFFIRMED.