**TIME OIL COMPANY, Plaintiff,**

v.

**CIGNA PROPERTY & CASUALTY INSURANCE COMPANY, et al., Defendants.**

**No. C88–1235R.**

United States District Court, W.D. Washington.

May 23, 1990.

Allan H. Baris, Harold Roland Hofstedt, Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendant Allianz Ins. Co.

William Jones Price, Karr Tuttle Campbell, Seattle, Wash., for defendants Continental Ins. Co., Harbor Ins. Co. and Glens Falls Ins. Co.

Douglas S. Dunham, Crane, Stamper, Dunham & Drury, Seattle, Wash., Ray L. Wong, Lisa J. Evans, Hancock, Rothert & Bunshoft, San Franciso, Cal., for defendant Great American Surplus Lines Ins. Co.

Steven Soha, Seattle, Wash., for defendants Holland–America Ins. Co. and Cigna Property & Cas. Ins. Co.

W. George Bassett, Bassett & Morrison, Seattle, Wash., for defendants Ins. Co. of State of Pa. and Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Kevin P. Kamraczewski, Kathryn T. Mondon, Elizabeth Colpoys, William C. Ruettinger, Dowd & Dowd, San Francisco, Cal., Mark Nels Thorsrud, Thorsrud, Cane & Paulich, Seattle, Wash., for defendant Northbrook Excess and Surplus Ins. Co.

Robert Jackson Stephenson, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for defendant Protective Nat. Ins. Co. of Omaha.

Vincent T. Marci, Dowd & Dowd, San Francisco, Cal., Mark Nels Thorsrud, Thorsrud, Cane & Paulich, Seattle, Wash., for defendant Royal Indem. Co.

Dennis Smith, Wilson, Smith, Cochran & Dickerson, Seattle, Wash., for defendant U.S. Fire Ins. Co.

Richard Franklin Allen, Cathy A. Spicer, Lane, Powell, Spears, Lubersky, Seattle, Wash., for defendants Underwriters at Lloyd's, London, River Thames Ins. Co., Ltd., Orion Ins. Co., Ltd., Orion Ins. Co., Public Ltd. T., Andrew Weir Ins. Co., Ltd., London & Overseas Ins. Co., Ltd., European Gen. Reinsurance Co. of Zurich, Guildhall Ins. Co., Ltd., Mercantile & Gen. Reinsurance Co., Ltd., Victory Ins. Co., Ltd. and Unknown British Co.

David R. Lord, Ferguson & Burdell, Seattle, Wash., Dennis J. Britt, Snohomish County Courthouse, Everett, Wash., William H. Bode, William H. Bode & Associates, Washington, D.C., for Time Oil Co.

## ORDER RE: SECOND ROUND OF MOTIONS FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on several motions for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, and having heard argument, the court finds and rules as follows:

### I

### FACTS

A. *General Background*

In 1964, Time Oil Company ("Time Oil") purchased the real property located at 3011 South Fife Street in Tacoma, Washington (the "Parcel"). Prior to 1964, and subsequent thereto until 1976, an oil recycling facility was operated on the Parcel. Underneath the Parcel and the surrounding properties lies the South Tacoma Channel Aquifer ("Aquifer"). The groundwater in the Aquifer is owned by the State of Washington. Near the Parcel, the City of Tacoma maintains a well, Well 12A, from which it pumps water from the Aquifer during the summer months.

In 1981, the United States Environmental Protection Agency ("EPA") detected the following chlorinated organic solvents in Well 12A: trichloroethylene (TCE); tetrachloroethylene (PCE); 1,1,2,2–tetrachloroethane (PCA); and 1,2–trans–dichloroethylene (DCE).[1] On May 13, 1982, the EPA advised Time Oil that it had been identified as a potential responsible party ("PRP") of the contamination. *See* Time Oil Exhibit 65.

Thereafter, in June 1984, the EPA notified Time Oil that its investigation disclosed that Time Oil's property was the principal source of the contamination at Well 12A. Pursuant to CERCLA, the EPA then issued an Administrative Order directing Time Oil to take remedial action. *See* Amended Complaint, Exhibit 1. Thereafter, beginning in August 1984, Time Oil sent notice of this potential claim to its insurance carriers. *See* Time Oil Exhibit 6.

Meanwhile, the State of Washington and the City of Tacoma brought an action against Time Oil to recover response costs incurred in eliminating the contamination at Well 12A, and to enjoin further release of hazardous substances. When the United States, through the EPA, filed a separate suit for response costs under CERCLA, the two actions were consolidated. *See* Cas. No. C85–478(TB). In 1988, Time Oil entered into a Consent Order with the government entities, thereby agreeing to pay $8.5 million plus interest representing response costs sustained in connection with the contamination at Well 12A. *See* Amended Complaint at Exhibit 4.

B. *Litigation History*

After unsuccessfully attempting to recover costs—including investigation, response and defense costs—from its numerous insurance carriers, Time Oil initiated this lawsuit.[2] In its complaint, Time Oil alleges three claims for relief. Under Count I, Time Oil seeks a declaratory judg-

---

**1.** These solvents are classified as "hazardous substances" in regulations promulgated pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA").

**2.** Defendants include Allianz Insurance Company ("Allianz"); American Home Assurance Company (f/k/a American Home Assurance Company) ("American Home"); The Central National Insurance Company of Omaha ("Central National"); Cigna Property & Casualty Insurance Company, (f/k/a "Aetna Insurance Company") ("Cigna"); The Continental Insurance Company ("Continental"); Glens Falls Insurance Company ("Glens Falls"); Harbor Insurance Company ("Harbor"); Horace Mann Insurance Company ("Horace Mann"); Insurance Company of the State of Pennsylvania ("ICSOP"); National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"); New England Insurance Company (f/k/a New England Reinsurance Corporation) ("New England"); Northbrook Excess and Surplus Insurance Company ("Northbrook"); Pacific Employers Insurance Co. ("PEIC"); The Protective National Insurance Company of Omaha ("Protective National"); Royal Indemnity Company ("Royal"); Underwriters at Lloyd's and certain foreign insurance companies ("Lloyd's"); and United States Fire Insurance Company ("U.S. Fire"). The companies providing primary coverage to Time Oil include Allianz; Central National; Continental; Harbor; Lloyd's; and Protective National ("primary carriers" or "primary insurers").

ment that its primary carriers (the "Count I defendants") breached their respective duties to defend Time Oil against all claims based on alleged property damage arising out of discharges from the Parcel. *See* Amended Complaint at ¶¶ 32–35. Under Count II, Time Oil seeks a declaratory judgment that all defendants breached their respective duties to indemnify. *See* Amended Complaint at ¶¶ 36–38. Under Count III, Time Oil alleges that the Count I defendants breached their implied covenants of good faith and fair dealing by refusing to defend Time Oil. *See* Amended Complaint at ¶¶ 39–40. Count III also charges that this refusal constituted a violation of the Washington Consumer Protection Act, RCW § 48.01.030. *See* Amended Complaint at ¶¶ 39–42.

Recently, the parties moved for summary judgment as to several thresholds issues. First, the Count I defendants moved for dismissal as to Count III. Second, Time Oil and relevant defendants filed cross-motions for summary judgment as to two types of clauses contained in Time Oil's insurance policies: the "absolute pollution exclusion" clause, and the "qualified pollution exclusion" clause. On April 2, 1990, the court issued rulings denying the Count I defendants' motion as to Count III; granting defendants' motion, and denying Time Oil's motion, as to the absolute pollution exclusion clause; and granting Time Oil's motion, and denying defendants' motion, as to the qualified pollution exclusion clause. *See* Order Re: Motions for Summary Judgment at 19; Order Granting Defendants' Motion to Vacate, and Granting in Part and Denying in Part Defendants' Motion for Reconsideration ("Order on Reconsideration") at 7–10.

The parties have now filed a second round of summary judgment motions covering myriad legal issues.

## II

## DISCUSSION

### A. *Preliminary Matters*

Before reaching the substance of the summary judgment motions, the court must address two procedural matters: (1) defendants' motion to strike a portion of the Declaration of Raymond Abendroth and (2) defendants' motion to strike the Declaration of Lyle Silka.

### 1. Abendroth Declaration

Time Oil has submitted the Declaration of Raymond Abendroth, Chief Executive Officer of Time Oil, in which he states:

> In a meeting on May 18, 1982, EPA representatives assured us that the issuance of a PRP letter was "routine" agency action and did not mean that Time Oil Co. was responsible for the contamination detected at Well 12A.

*See* Declaration of Abendroth at 3. Central National, Glens Falls, National Union and Royal Indemnity move to strike this statement, arguing that the Declaration does not show affirmatively that Abendroth attended the May 18 meeting, and that the statement is inadmissible hearsay.

■ Time Oil concedes in its opposition that Abendroth was not present at the meeting and did not hear the statements which he attributes to the EPA. *See* Time Oil's Opposition to Defendants' Motion to Strike One Sentence in the Abendroth Declaration at 5. As such, the statement is double hearsay: testimony by Abendroth that other persons working for Time Oil heard EPA representatives make certain statements. *See* Fed.R.Evid. 805.

Time Oil attempts to avoid the hearsay problem by arguing that Abendroth's statement is not being offered for the truth of the matter asserted therein, but rather as evidence of Time Oil's state of mind. Such evidence, however, is not appropriately presented by way of Abendroth. *See, e.g., United States Football League v. National Football League,* 842 F.2d 1335, 1376 (2d Cir.1988); *United States v. McKinney,* 707 F.2d 381 (9th Cir.1983).[3] The motion must be granted.

### 2. Silka Declaration

Pursuant to Fed.R.Civ.P. 6(d), "when a motion is supported by affidavit, the affida-

---

3. As defendants note, Time Oil could avoid the hearsay problem by offering the testimony of a person who attended the May 18 meeting. *See*

vit shall be served with the motion." Nonetheless, along with one of its reply briefs, Time Oil filed the Declaration of Lyle Silka. Defendants move to strike the Silka Declaration as untimely. *See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515 (9th Cir.1983).

██ Time Oil does not address the requirement established in Federal Rule 6(d); rather, it argues that the Local Rules of this district permit a moving party to file supporting material along with a reply brief. *See* Time Oil's Opposition to Motion to Strike Silka Declaration at 2–4 (*citing* Local Rules W.D. Wash. CR 7(b)(3)). Local Rule CR 7(b)(3) does not authorize a general extension of the timing requirements of Federal Rule 6(d).

Nevertheless, the court will deny defendants' motion to strike. Having reviewed the Silka Declaration, the court concludes that defendants have not been prejudiced by this untimely filing. *See infra* § II.D.2. *See also Strang v. U.S. Arms Control & Disarmament Agency,* 864 F.2d 859, 861 (D.C.Cir.1989) (affidavits timely filed when served the day of the hearing where they "merely supported the existing motion and did not constitute a new motion for summary judgment on additional issues or grounds").

As an alternative basis of relief, defendants request an opportunity to file a supplemental response regarding the evidence presented by way of the Silka Declaration. The court concludes that no additional briefing is needed.

### B. *Standard for Summary Judgment*

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir. 1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judg-

ment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

In three recent cases, the Supreme Court has clarified what the nonmoving party must do to withstand a motion for summary judgment. First, the Court noted that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact as to that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Finally, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### C. *Defendants' Motions Re: Pollution Exclusion Clauses*

██ Defendants present several motions which require the court to interpret provisions contained in insurance policies issued to Time Oil. Insurance policies are to be construed in accordance with the general rules applicable to other contracts, the interpretation being a question of law. *See, e.g., State Farm Gen. Ins. Co. v. Emerson,* 102 Wash.2d 477, 480, 687 P.2d 1139 (1984). Unless an ambiguity in the contract exists and contradictory evidence is introduced to clarify the ambiguity, sum-

Defendants' Reply Memorandum on Motion to Strike Portion of Abendroth Declaration.

mary judgment is proper even though the parties disagree as to the legal effect of the provision in question. *See, e.g., Felice v. St. Paul Fire & Marine Ins.,* 42 Wash. App. 352, 356–57, 711 P.2d 1066 (1985). Although ambiguities in insurance policies are to be interpreted in favor of the insured, clear and unambiguous language must be given effect according to its plain meaning. *See, e.g., id.*

The Washington Supreme Court has explained:

> In construing the language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. A contract of insurance should be given a fair, reasonable, and sensible construction, consonant with the apparent object given the contract by the average [person] purchasing insurance. The contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction that would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective.

*See Morgan v. Prudential Ins. Co. of Am.,* 86 Wash.2d 432, 434–35, 545 P.2d 1193 (1976).

#### 1. U.S. Fire's, Lloyd's and Harbor's Motion Re: Oil Industries Limitation Endorsement

U.S. Fire issued an umbrella insurance policy, effective for the period from April 28, 1969 and November 1, 1979, which contained an "Oil Industries Limitation Endorsement". The endorsement includes the following provision:

> A. It is agreed that this insurance does not apply under coverage 1(b) to liability

imposed upon insured by law, or assumed by the insured under contract for:

.　　.　　.　　.　　.

> 3. Injury caused by seepage, pollution or contamination, unless seepage, pollution or contamination is cause by an unintended and unexpected happening during the period of this insurance, but this exclusion (3) shall not be construed as excluding any liability which would otherwise be covered under this policy for property damage caused by a sudden, unintended and unexpected happening during the period of this policy arising out of seepage, pollution or contamination.

*See* Memorandum in Support of U.S. Fire's Motion for Summary Judgment at 3. U.S. Fire moves for summary judgment, arguing that this clause excludes from coverage the damage which gave rise to the $8.5 million settlement between Time Oil and the government entities. Essentially, U.S. Fire argues that the phrase "sudden, unintended and unexpected" establishes a temporal restriction to coverage. Emphasizing that the discharge(s) in this case occurred over the course of several years, U.S. Fire asserts that the endorsement applies in this case. Lloyd's and Harbor join in the motion.

Time Oil opposes the motion, arguing that the language in this endorsement should have the same legal effect as the "sudden and accidental" language contained in the qualified pollution exclusion clause.[4] When construing the language of the qualified pollution exclusion clause, this court ruled that regardless of the temporal quality of the events giving rise to the property damage, the exclusionary clause only excludes coverage for discharges that are foreseen, expected or non-accidental. *See* Order Re: Motions for Summary Judg-

---

**4.** The "qualified pollution exclusion" clause states that the insurance does not apply to property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or

body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

*See* Memorandum in Support of Time Oil's Motion for Partial Summary Judgment on the Qualified Pollution Exclusion at 1 (emphasis added).

ment at 15–18; Order on Reconsideration at 8 n. 5.

■ Noting that the court must give meaning and purpose to every word in the insurance agreements, U.S. Fire now argues that the phrase "sudden, unintended and unexpected" can have but one logical interpretation: *"instantaneous,* unexpected and unintended." *See* Memorandum in Support of U.S. Fire's Motion for Summary Judgment at 1 (emphasis in original). This argument is without merit.

The Washington Supreme Court has previously been called upon to construe language similar to the exclusion presently before the court. *See Anderson & Middleton Lumber Co. v. Lumbermen's Mutual Casualty Co.,* 53 Wash.2d 404, 333 P.2d 938 (1959). In *Anderson,* the defendant argued that an insurance policy providing coverage for a "sudden and accidental" breakage of equipment precluded coverage where the breakage occurred gradually. Rejecting this argument, the *Anderson* court stated: "We do not so construe the word 'sudden,' when its primary meaning, in common usage, is not 'instantaneous' but rather 'unforeseen and unexpected.'" *See* 53 Wash.2d at 408–09, 333 P.2d 938.

■ Accordingly, Washington law is settled that in the context of an insurance exclusion the word "sudden" does not create a temporal restriction to coverage. *See also Boeing Co. v. Aetna,* C86–352WD (W.D. Wash. Oral Decision April 16, 1990) (*"Boeing* Oral Decision") at 9–11. Such an interpretation applies whether the term is found in an exclusionary clause or an endorsement. Therefore, the court concludes that the endorsement at issue only excludes coverage for discharges that are foreseen, expected and intended.

On a motion for summary judgment, the court is not permitted to weigh the evidence, pass on credibility, or speculate as to the ultimate findings of fact. *See, e.g., Crown Zellerbach,* 662 F.2d at 591 (9th Cir.1981). Rather, to ascertain the applica-

bility of the endorsement, the jury must first determine whether the discharge(s) on the Parcel was foreseen, expected and intended.

2. PEIC's Motion Re: Oil Industries Limitation Endorsement

PEIC issued an excess liability insurance policy, effective for the period from November 1, 1978 to November 1, 1979, which contained an "Oil Industries Limitation Endorsement." PEIC moves for summary judgment, arguing that the endorsement excludes from coverage the damage which gave rise to the $8.5 million settlement between Time Oil and the government entities.

The court has previously granted PEIC's motion for summary judgment regarding the absolute pollution clause. *See* Order Re: Motions for Summary Judgment at 19. Accordingly, PEIC's present motion is moot. *See* PEIC's Reply to Time Oil's Memorandum in Opposition to Summary Judgment Motion Re: Exclusion for Cost of Cleaning Up Polluting Substances at 2.[5]

3. ICSOP's and U.S. Fire's Motion Re: Contamination Exclusion

ICSOP issued an excess umbrella liability policy to Time Oil, effective from July 1, 1970 to July 1, 1973. This policy includes the following endorsement:

It is understood and agreed that such insurance as is afforded by this policy shall not apply to liability for the assured for contamination or pollution of land, water, air or real or personal property or any injuries or damages resulting therefrom caused by an occurrence.

For the purpose of this endorsement, an "occurrence" means a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period. All damages arising out of such exposure to substantially the same general conditions shall be considered arising out of one occurrence.

*See* Memorandum in Support of ICSOP's Motion for Summary Judgment at Exhibit

*See id.*

**5.** Apparently, PEIC filed this motion because an "order of dismissal" has not yet been entered.

2. ICSOP moves for summary judgment, arguing that this clause excludes from coverage the damage which gave rise to the $8.5 million settlement between Time Oil and the government entities. U.S. Fire joins in the motion, noting that one of its policies contains a virtually identical "Contamination and Pollution Exclusion" clause. *See* U.S. Fire's Joinder in ICSOP's Motion for Summary Judgment at 1–2.

■ In opposition, Time Oil presents two arguments centering around the use of the term "occurrence" in the endorsement. First, Time Oil notes the separate definition of occurrence in the endorsement excludes the concept of "accident" from the policies general definition of occurrence. Therefore, Time Oil contends, the qualified pollution exclusion preserves coverage for pollution-related claims caused by accidents. *See* Time Oil's Opposition Re: ICSOP's and U.S. Fire's Pollution and Contamination Exclusions ("Opposition Re: Contamination Exclusion") at 5–6. This argument is meritless. The qualified pollution exclusion clause does not "preserve" coverage for all accidental discharges. *See, e.g., Harrison Plumbing v. New Hampshire Ins.*, 37 Wash.App. 621, 627, 681 P.2d 875 (1984) (by their very nature, exclusionary clauses do not grant coverage). Rather, the clause *does not exclude* coverage for discharges which are unforeseen, unexpected and accidental. *See* Order Re: Motions for Summary Judgment at 17–18; Order on Reconsideration at 8 n. 5.

■ Second, Time Oil argues that the preclusive scope of the exclusion is ambiguous. In this regard, Time Oil states:

Here, the insurers drafted a policy that provided indemnification for damages caused by an occurrence, which was defined in the coverage section of the policy as including *either* accidents *or* the continuous or repeated exposure to conditions unexpectedly and unintentionally causing injury. The insurers then attached a pollution exclusion endorsement which stated that pollution arising from an "occurrence" would not be covered, but which set forth a separate definition of "occurrence" for purposes of the en-

dorsement that deleted the language including accidents as one type of occurrence. At the very least, this policy is susceptible to an interpretation of including coverage for pollution-related occurrences that fall within the definition of "accident."

*See* Time Oil's Opposition Re: Contamination Exclusion at 7–8. The court disagrees. Regardless of the scope of the coverage provisions, the exclusion at issue clearly and unambiguously states that the policies shall not apply to "liability for the assured for contamination or pollution of land, water, air or real or personal property." Use of a distinct "occurrence" definition for purposes of the exclusion does not render this language ambiguous.

■ Washington courts consistently state that clearly worded exclusionary clauses and language of limitation in a policy, unless contrary to public policy, must be given effect. *See, e.g., Felice*, 42 Wash.App. at 356, 711 P.2d 1066; *Brown v. United Pacific Ins. Co.*, 42 Wash.App. 503, 506, 711 P.2d 1105 (1986). Because the damage giving rise to Time Oil's $8.5 million liability clearly falls within the ambit of the contamination exclusion, ICSOP's and U.S. Fire's motion for summary judgment must be granted.

### 4. Central National's Motion Re: Cleanup Exclusion

Two Central National policies include the following "General Endorsement":

It is agreed that, if with respect to the operation of the Named Insured there is a discharge, dispersal, release or escape of smoke, vapors, oil or other petroleum substance or derivative (including any oil refuse or oil mixed waste) into or upon the atmosphere, land, any watercourse, body of water, bog, marsh, swamp or wetland, the insurance does not apply to Bodily Injury or Property Damage arising out of such discharge, dispersal, release or escape unless it is sudden and accidental.

It is further agreed that no coverage is provided for any cleanup of any water-

course, body of water, bog, marsh or wetland.

*See* Central National's Motion and Memorandum in Support of Motion for Summary Judgment Re: Cleanup Exclusion at Exhibits A and B. Central National moves for summary judgment, arguing that this endorsement excludes from coverage the damage which gave rise to the $8.5 million settlement between Time Oil and the government entities.

Time Oil opposes the motion, advancing essentially three arguments. *See* Time Oil's Opposition to Central national's Motion for Summary Judgment Re: Cleanup Exclusion ("Opposition Re: Cleanup Exclusion"). First, Time Oil argues that it does not seek coverage for "cleanup" costs. Second, Time Oil argues that the South Tacoma Channel Aquifer is neither a "watercourse" nor a "body of water." Third, Time Oil argues that the endorsement is ambiguous in light of the facts of this case. In this regard, Time Oil cites extrinsic evidence regarding the scope of the endorsement.

First, the Central National endorsement excludes coverage for certain "cleanup" costs. Time Oil now argues that it is not seeking recovery for cleanup costs in this action. In support, Time Oil notes that CERCLA distinguishes between two types of environmental damage claims: (1) those based on damage to a natural resource, 42 U.S.C. § 9607(a)(4)(C); and (2) those reflecting cleanup costs, 42 U.S.C. § 9607(a)(4)(A). Referring solely to the terms of the Consent Order, Time Oil claims that its $8.5 million liability resulted from damage to a natural resource—the South Tacoma Channel Aquifer. *See* Consent Order at ¶ 10.

▆▆▆ Central National responds that the distinction embodied in CERCLA is of little consequence in this case. In point of fact, the Consent Order specifically states that the government entities did not press claims based on natural resource damage. *See* Consent Order at 9. Moreover, and

more significantly, Central National cites a wealth of evidence which suggests that Time Oil's obligation to the EPA, and other government entities, constituted response costs for the *cleanup* of Well 12A. *See* Central National's Reply Memorandum Re: Cleanup Exclusion 2–6. Because Time Oil cites no tangible evidence which might support its claim,[6] the court concludes that no reasonable jury could find that the damages now sought by Time Oil do not stem from cleanup costs. *See, e.g., Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *T.W. Elec.,* 809 F.2d at 631. Second, the endorsement excludes coverage for "cleanup of any watercourse, body of water, bog, marsh or wetland." Central National contends that this broad language encompasses damage to all water, including water in the South Tacoma Channel Aquifer and Well 12A. Anticipating Time Oil's responsive arguments, Central National emphasizes that English Dictionaries do not impose boundary-type restrictions when defining the term "watercourse". For example, Webster defines "watercourse" as:

1) the channel through which water flows either continuously or intermittently;

2) a stream of water (as a river, brook or underground stream)

*See* Webster Third New Dictionary (1961).

As anticipated, Time Oil argues that an aquifer is an "unbounded subterranean water contained, sponge-like, in deposits of permeable sand, gravel, or rock." *See* Time Oil's Opposition Re: Cleanup Exclusion at 8–10; Time Oil's Opposition to Defendants' Motion for Summary Judgment Re: Absolute Pollution Exclusion Clause at 12. Therefore, intimating that Central National's endorsement covers only bounded bodies of water, Time Oil claims that the South Tacoma Channel Aquifer does not satisfy this requirement.[7]

▆▆▆▆ The court is not persuaded by Time Oil's arguments. Undefined terms in

---

6. At oral argument, the court asked Time Oil's counsel whether he could cite some evidence which might establish that the money paid to the government entities stemmed from harm to a natural resource, as distinct from cleaning the

contamination of Well 12A. Counsel responded that he could cite no such evidence.

7. Similarly, Time Oil claimed at oral argument that the clause is meant only to cover "blue water."

an insurance policy are to be given their plain, ordinary, and popular meaning. *See, e.g., Farmers Ins. Co. v. Miller*, 87 Wash.2d 70, 73, 549 P.2d 9 (1976). The language used in Central National's endorsement clearly and unequivocally reflects an intent to exclude cleanup of any and all water. The court concludes that this language cannot reasonably support the limitations suggested by Time Oil.

■ Finally, Time Oil's ambiguity argument is premised on an assertion that there is some conflict between the first and second paragraph of the endorsement. *See* Time Oil's Opposition Re: Cleanup Exclusion at 5–6. This argument is meritless. The second paragraph, commencing with "It is *further* agreed," is a wholly independent exclusion. Along the same lines, Time Oil contended at oral argument that the language of the first paragraph suggests that the entire endorsement applies only to oil spills. The language of this general endorsement is not so limited.

For all of these reasons, the court concludes that the Central National endorsement is not fairly susceptible to the various constructions suggested by Time Oil. Given this conclusion, Time Oil's reliance on extrinsic evidence is unavailing. The court may not refer to parol evidence to "modify the contract or create ambiguity where none exists." *See Transcontinental Ins. v. Utility System*, 111 Wash.2d 452, 457, 760 P.2d 337 (1988). *See also Utilities System v. PUD 1*, 112 Wash.2d 1, 17, 771 P.2d 701 (1989); *St. Yves v. Midstate Bank*, 111 Wash.2d 374, 378, 757 P.2d 1384 (1988).

The facts are clear that Time Oil's $8.5 million liability resulted from the discharge of contaminants into the South Tacoma Channel Aquifer and Well 12A. Because the general endorsement at issue clearly and unambiguously excludes from coverage the cleanup of such pollution, Central National's motion for summary judgment must be granted.

5. Royal Indemnity's and National Union's Motion Re: "Underground Property" Exclusion

■ Royal Indemnity and National Union issued policies which include the following "Oil Industries Limitation Endorsement." The endorsement provides in pertinent part:

In consideration of the premium charged, it is agreed that coverage afforded by this policy shall not apply to any liability:

. . . . .

3. for:

(a) injury to or destruction of underground property as defined herein, or

(b) ... any expense incurred or rendered necessary to prevent or minimize loss or damage to property resulting from acts or omissions causing underground damage ...

The term "underground property" means oil, gas, water or other mineral substances including any title, interest or estate therein, which at the time of the act or omission causing loss of, injury to or destruction of such substance (or loss, or impairment or reduction of the value of such title, interest or estate) has not been reduced to physical possession above the earth's surface; such term also includes any well; hole formation, strata or area beneath the surface of the earth in or through which exploration for or production of any substance is carried on, or any casing, pipe, bit, tool, pump or other drilling or well-servicing machinery or equipment which is located in any such well or hole beneath the earth's surface.

*See* Royal Indemnity's and National Union's Motion for Summary Judgment of Dismissal on Policy Exclusion for Injury to "Underground Property" at 5–6. Royal Indemnity and National Union move for summary judgment, arguing that Paragraph 3 excludes from coverage the damage which gave rise to the $8.5 million settlement between Time Oil and the government entities.

Time Oil opposes the motion arguing that a careful reading of Paragraph 3, and the endorsement as a whole, suggest that the exclusion applies only to oil industry drilling operations. The court disagrees.

Paragraph 3 excludes from coverage any injury to "underground property". To delineate the scope of that term, the para-

graph presents a complex, and extremely broad, definition section. Some of this language relates to drilling operations. However, contrary to Time Oil's suggestion, all portions of the endorsement are not so limited. The definition begins: "The term 'underground property' means oil, gas, water or other mineral substances ..."

Courts and commentators recognize that terms and conditions of each part of an insurance policy, like other contracts, must be read and interpreted together in light of all other parts of the policy. *See, e.g., Transcontinental Insurance Co. v. W.P. U.D.U.S.*, 111 Wash.2d 452, 760 P.2d 337 (1988); *Morgan*, 86 Wash.2d at 434–35, 545 P.2d 1193; 1 G. Couch, *Insurance* § 15:29 (1959). Citing this general principle, Time Oil argues that the endorsement as a whole relates only to drilling activities. Similarly, relying on the recent Washington Supreme Court decision in *Boeing Co. v. Aetna Cas. and Sur. Co.*, 113 Wash.2d 869, 784 P.2d 507 (1990), Time Oil also argues that Paragraph 3 is an "odd" place find an exclusion of coverage that has nothing to do with oil industry operations.

■ The court is not persuaded by these arguments. Washington has rejected the doctrine of structural ambiguity. *See, e.g., State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 484–85, 687 P.2d 1139 (1984). In fact, Washington courts have consistently noted that exclusionary clauses need not be harmonized with each other. *See, e.g., Harrison Plumbing v. New Hampshire Ins.*, 37 Wash.App. 621, 627, 681 P.2d 875 (1984). The *Boeing* court did not overturn these precedents. There, the court held that the "as damages" clause in a comprehensive general liability ("CGL") policy does not preclude coverage for cleanup costs. As a prefatory remark, the court merely noted: "The subject clause, 'as damages', is sandwiched into the general coverage provisions of policyholders' insurance contracts. This is an odd place to look for exclusions of coverage." *See Boeing*, 113 Wash.2d at 877, 784 P.2d 507.

Here, by contrast, the endorsement consists of several separate exclusions to cov-erage. Paragraph 3 indicates that the relevant policies do not afford coverage for any liability arising from injury to underground property—including water or other mineral substances. This aspect of the endorsement is not ambiguous. Because the damage which gave rise to Time Oil's $8.5 million liability clearly falls within the terms of Paragraph 3, Royal Indemnity's and National Union's motion for summary judgment must be granted.

### D. *Defendants' Motions Re: Occurrence*

■ An insurance policy is a contract whereby the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event. *See, e.g.,* RCW 48.01.010 et seq.; 1 G. Couch, *Insurance* §§ 1:5, 2:7. Accordingly, many courts have concluded that if an event causing loss is no longer contingent or unknown prior to inception of an insurance policy, there is no coverage under that policy. *See, e.g., Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 28–29 (1st Cir.1981); *Northwest Steel Rolling Mills, Inc. v. Fireman's Fund Insurance Co.*, No. C86–376C (W.D.Wash. April 17, 1987); *New Castle County v. Hartford Acc. & Indem. Co.*, 685 F.Supp. 1321, 1329–30 (D.Del.1988).

Most CGL policies predicate coverage on the existence of an "occurrence." These policies (with minor variations) define an occurrence as

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

*See* Defendants' Memorandum in Support of Motion for Summary Judgment Re: No Occurrence Took Place After 1974 ("1974 Occurrence Memo") at 10. Consistent with the "known risk" principle, courts interpreting such provisions have held that coverage does not exist where the insured knew or intended damage to result from its conduct. *See, e.g., Boeing* Oral Decision at 5–7; *Tieton v. General Ins. Co.*, 61 Wash.2d 716, 380 P.2d 127 (1963); *Castle &*

*Cook v. Great American Ins.,* 42 Wash. App. 508, 711 P.2d 1108 (1986); *Gruol Construction Co. v. Ins. Co. of North America,* 11 Wash.App. 632, 524 P.2d 427 (1974).

Defendants now present two motions on the occurrence issue, arguing that Time Oil was aware of the possibility of contamination at the Parcel before purchasing certain insurance policies. First, several defendants seek a ruling that no occurrence took place after 1974. Second, other defendants argue that no occurrence took place after 1982. Time Oil opposes the motions claiming that, up until 1984, the company neither expected nor intended the property damage for which it now seeks coverage.

### 1. No Occurrence after 1974

■ In 1973, Time Oil leased a portion of the Tacoma parcel to Quendall, Inc. which, in turn, sublet the property to Golden Penn, Inc. ("Golden Penn"). Golden Penn operated a waste oil reprocessing operation at the cite. According to defendants, Golden Penn "frequently allowed considerable amounts of waste oil and other substances to flow out onto the ground and away from the site generating complaints by neighbors." *See* Defendants' 1974 Occurrence Memo at 2 (*citing* Declaration of Michael Farrell at Exhibits 3–12).

In 1974, Time Oil notified the president of Golden Penn that the company should cease discharging waste oil on the property. *See* Farrell Declaration at Exhibit 3. At about the same time, the Washington State Department of Ecology ("DOE") became concerned about Golden Penn's operations at the site. *See id.* at Exhibit 7. Subsequently, in 1975, Time Oil brought suit against Golden Penn, seeking to enjoin the company's further pollution of the premises. In 1976—following litigation; a brief stay imposed by the Bankruptcy Court; and a serious fire—Golden Penn discontinued its operations on the property.

Based on these facts, several defendants claim that Time Oil knew of contamination on the property in 1974.[8] Accordingly, these defendants ask this court to declare that they have no duty under their respective policies for any claims made against Time Oil for the "investigation and remediation of environmental contamination associated with the alleged release of hazardous substances at the [Parcel]." *See* Defendants' 1974 Occurrence Memo at 1–2. In response, Time Oil argues that the contamination at issue in this lawsuit is in no way connected to Golden Penn's activities.

The parties present widely divergent views regarding the nature and cause of the contamination which gave rise to the $8.5 million liability of Time Oil. This factual dispute precludes summary judgment as to this issue. *See, e.g., Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *T.W. Elec.,* 809 F.2d at 631.

### 2. No Occurrence after 1982

■ On May 3, 1982, the EPA sent to Time Oil a PRP letter in regards to pollution located in the Commencement Bay Area. *See* Time Oil Exhibit 64. On May 13, 1982, the EPA notified Time Oil that contamination had been discovered in the Well 12A. *See* Time Oil Exhibit 65. The letter, sent to nine businesses located in the vicinity of the well, stated:

> Because your firm is located near the contaminated drinking water well and because hazardous materials are used in your type of business, EPA believes your firm is a potential contributor to the problem.

*See id.*

Based on these letters, certain defendants now move for summary judgment claiming that no occurrence took place after May 1982.[9] These defendants argue that "Time Oil's pre-existing knowledge of both the groundwater contamination and

**8.** These defendants include Allianz, Central National, Cigna, Great American, National Union, New England, Northbrook, PEIC, Protective National and Royal Union. *See* Farrell Declaration at Exhibit 1.

**9.** These defendants, each of which issued policies to Time Oil after May 1982, include Central National, Glens Falls, National Union, and Royal Indemnity. *See* Motion for Summary Judgment of Defendants Central National, Glens Falls, Royal Indemnity and National Union Re: No "Occurrence" after 1982 PRP Notification ("1982 Occurrence Memo") at 5–7.

its status as a potentially responsible party precludes coverage under the moving parties' policies as a matter of law." *See* Defendants' 1982 Occurrence Memo at 2. Time Oil responds that the EPA's letter does not unequivocally prove that Time Oil knew that its Parcel was responsible for the contamination at Well 12A. *See* Time Oil's Opposition to Defendants' Motion Re: "Occurrence" after 1982 at 2–4.

In support of their motion, defendants rely heavily upon two recent unreported cases: *Queen City Farms, Inc. b. Aetna Casualty Ins. Co.*, No. 86–2–06236–0 (Wash.Sup.Ct. Oral Decision August 7, 1987) ("*Queen City* Decision"); *Northwest Steel Rolling Mills, Inc. v. Firemen's Fund Ins. Co.*, C86–376 (W.D.Wash. Order April 17, 1987) ("*Northwest Steel* Order"). These cases are not precisely analogous to the situation presented here. In *Queen City*, the plaintiffs sought to recover on a policy issued after September 1981. The court concluded that no occurrence took place under that policy, explaining:

> Now, the plaintiffs knew by September 1, 1981, by an appropriate governmental agency, that their premises had been found to be contaminated.
>
> .    .    .    .    .
>
> There is no question in the Court's mind that as of September 1, 1981, plaintiff at least was aware that upon the finding of hazardous waste and its potential and the need for a clean-up, that substantial funds of money somehow would have to be expended, either by plaintiff or in conjunction with others, to remedy the situation.

*See Queen City* Decision at 64–65. In *Northwest Steel*, the EPA issued an order directing the plaintiff to implement a plan to remedy surface and subsurface contamination at the Western Processing site in July 1984. The court rejected the plaintiff's attempt to recover on an insurance policy issued in December 1984, noting that the claim was not an occurrence covered by the policy. *See Northwest Steel* Order at 3.

In this case, the record does not unambiguously show that Time Oil possessed the same quantum of knowledge as the plaintiffs in *Queen City* and *Northwest Steel* prior to purchasing the relevant insurance policies. Nevertheless, the court concludes that Time Oil may not recover on the policies at issue in this motion. *See New Castle County v. Hartford Acc. and Indem. Co.*, 685 F.Supp. 1321, 1329–30 (D.Del. 1988). As explained by the court in *New Castle:*

> The case at issue, where the insured had evidence of a probable loss before the policy began, more closely resembles *Summers v. Harris*, 573 F.2d 869 (5th Cir.1978). In *Summers* the Fifth Circuit held that an insurer need not provide coverage under a flood insurance policy for damages from a flood which began before the policy was issued. *Id.* at 872. Though the flood waters had not yet reached the insured's house when the policy was issued, and therefore the insured did not know for certain that the loss would occur, the court stressed that the flood was one continuous process that had begun prior to the policy. *Id.* Similarly, in the case at bar, the loss may not have been a certainty when the policy was issued. However, the process causing the loss began before the policy was issued, and the [claimant] received strong indications that it would occur. The holding in *Summers* was adopted by the Third Circuit in *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56 (3d Cir.1982). Applying general principles of insurance law, the court denied coverage because "the risk of liability was no longer unknown." *Id.* at 63. This general rule has been adopted by several courts. *See Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir. 1981); *Drewett v. Aetna Cas. & Sur. Co.*, 539 F.2d 496 (5th Cir.1976); *Presley v. National Flood Insurers Assoc.*, 399 F.Supp. 1242 (E.D.Mo.1975). Other courts have adopted a similar rule that where there is evidence beforehand indicating a substantial probability that loss will occur, if the loss does occur, it is not an occurrence. *See City of Carter Lake v. Aetna Cas. & Sur.*, 604 F.2d 1052, 1059 (8th Cir.1979); *Honeycomb Systems*

*Inc. v. Admiral Ins. Co.,* 567 F.Supp. 1400 (D.Me.1983).

*See New Castle,* 685 F.Supp. at 129–30.

For the reasons enunciated in *New Castle,* this court concludes that the PRP letters in May 1982 notified Time Oil that there was a "substantial probability" that it would be required to pay response costs relating to the contamination. *See id.*[10]

■ Furthermore, insurance policies traditionally have been considered contracts requiring the utmost good faith. *See, e.g., Stipich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928). In May 1982, Time Oil might not have known, as a certainty, that it would be found liable for the contamination of the South Tacoma Channel Aquifer and Well 12A. Nevertheless, before obtaining additional insurance which would cover that damage, public policy concerns and equitable principles dictate that Time Oil should have revealed the existence of the substantial possibility that it would be required to pay response costs relating to the contamination.

### E. *Lloyd's Motion Re: Late Notice*

Lloyd's and certain London Market insurance companies issued primary liability policies to Time Oil which were in force during the years 1964 to 1970. The policies required Time Oil to give Lloyd's "written notice 'as soon as practicable' of any occurrence likely to result in liability to Time Oil or in a claim under the policy." *See* Lloyd's Memorandum in Support of Motion for Summary Judgment Re: Late Notice at 6. Moreover, the policies stated:

If claim is made or suit is brought against the assured, the assured shall *immediately* forward to Underwriters every demand, notice, summons or other

process received by him or his representative.

*See* Time Oil Exhibit 69.

■ In 1984, Time Oil sent to Lloyd's agent, Fred S. James & Company, a letter apprising the company of certain claims arising from the Parcel. *See* Time Oil Exhibit 6. This notice specifically referenced an excess policy issued by Lloyd's. In December 1987, Time Oil realized that it had misplaced certain CGL policies issued by Lloyd's. Soon thereafter, in January 1988, Time Oil notified Lloyd's as to claims based on these CGL policies.

Lloyd's now moves for summary judgment, arguing that Time Oil did not provide timely notice. As a threshold matter, Time Oil asserts that its 1984 notice letter to Fred S. James fully satisfied its obligations.[11] The court disagrees. Each of the relevant insurance policies require Time Oil to provide notice of an occurrence. And for good reason. An insurer's response necessarily depends on the terms of the policy or policies upon which the claim is based. For example, even if notified of the same occurrence, a primary insurer is likely to have significantly different concerns than an excess insurer.

Anticipating this conclusion, Time Oil argues that it satisfied the "as soon as practicable" requirement. Nonetheless, Time Oil does not claim or suggest that it satisfied the "immediate" notice provision. *See generally* Time Oil's Opposition to Lloyd's Motion for Summary Judgment Re: Late Notice ("Opposition to Lloyd's Motion"). The government entities—Washington, Tacoma, and the United States—commenced lawsuits against Time Oil in 1985 and 1986, but Time Oil did not provide notice under the CGL policies until 1988.

This does not necessarily mean that Lloyd's must be released from its responsibilities. To defeat coverage an insurer must "demonstrate not only a substantial

---

**10.** This holding is consistent with the district court's rulings in *Boeing.* There, the court concluded that a PRP letter marked the commencement of a "suit" for purposes of the insurers' duty to defend. *See Boeing* Oral Decision at 21–24. *See also infra* § II.I.

**11.** At oral argument, Time Oil went so far as to assert that Lloyd's real gripe is with Fred S. James.

**1416**

and material breach by the insured, but also that the company has incurred prejudice by the insured's failure to cooperate." *See Oregon Automobile Ins. Co. v. Salzberg,* 85 Wash.2d 372, 376, 535 P.2d 816 (1975). *See also Safeco Title Ins. Co. v. Gannon,* 54 Wash.App. 330, 774 P.2d 30 (1989) (noting that because insurers contract to cover risks which by there very nature are open-ended, "to allow the denial of coverage where untimely notice of a claim does not prejudice the insurer would be to elevate form over substance"); *Castle & Cooke, Inc. v. Great American Ins. Co.,* 42 Wash.App. 508, 711 P.2d 1108 (1986). Prejudice is presumed only in extreme cases, and the party claiming prejudice has the burden of proof. *See, e.g., Baugh Construction Co. v. Mission Ins. Co.,* 836 F.2d 1164 (9th Cir.1988) (applying Washington law). The issue of prejudice is generally one of fact. *See id.*

■ Lloyd's argues that it has suffered prejudice in that the company could not conduct a meaningful investigation of Time Oil's claims, and it was unable to interview key witnesses who have either lost memory or died. *See* Lloyd's Reply Memo Re: Late Notice at 7–8. Time Oil responds that Lloyd's did not suffer any actual prejudice in this case, emphasizing that Lloyd's never intended to investigate or defend Time Oil's claims, and that Lloyd's was not deprived of an opportunity to participate in the defense of the action or the subsequent settlement negotiations. *See* Time Oil's Opposition to Lloyd's Motion at 12–22.

At this stage of the proceeding, the court is not permitted to weigh the evidence, pass on credibility, or speculate as to the ultimate findings of fact. *See, e.g., Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981). Because Lloyd's has failed to show by undisputed evidence that it has suffered prejudice due to Time Oil's failure to give timely notice, the court must deny Lloyd's motion for summary judgment. The prejudice issue will be resolved at trial.

### F. *Time Oil's Motion Re: Occurrence*

Time Oil moves for summary judgment, arguing that the exclusion to the "occurrence" clause in Time Oil's CGL policies does not bar coverage in this case. In support of this motion, Time Oil argues that it did not expect, intend or know of the pollution damage to the South Tacoma Aquifer and Well 12A before procuring any insurance policies. For the reasons previously enunciated, with the exception of the policies purchased after May 1982, these issues are not appropriately resolved on a motion for summary judgment. *See supra* § II.D.

### G. *Time Oil's Motion Re: Trigger of Coverage*

Each of the eighteen defendant insurers issued to Time Oil one or more CGL policy during the period from 1964 to 1982. These policies all contain provisions which establish a "trigger of coverage."[12] The parties seem to agree that the policy trig-

---

12. For example, Lloyd's policy stated:
  Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability
  (a) imposed upon the Assured by law

  for damages, direct or consequential and expenses, all as more fully defined by the term "ultimate net loss" on account of:

  (II) Property damage

caused by or arising out of each occurrence happening anywhere in the world.

  OCCURRENCE—The term "Occurrence" wherever used herein shall mean an accident or a happening or event, or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from the premises location shall be deemed one occurrence.
  *See* Time Oil Exhibit 1.

gers encompass four elements: (1) an accident, including continuous or repeated exposure to conditions; (2) bodily injury or property damage; (3) the bodily injury or property damage must happen during the policy period; and (4) the bodily injury or property damage must be neither expected nor intended from the standpoint of the insured. *See, e.g.,* Defendants' Brief in Opposition to Time Oil's Motion for Summary Judgment on the Issue of an "Occurrence" at 1; Time Oil's Memorandum Re: Trigger of Coverage ("Trigger of Coverage Memo") at 8–9.

In this motion, Time Oil seeks a ruling that

> each comprehensive general liability policy providing coverage at any time from when the property was purchased by Time Oil in 1964 through when Time Oil was informed of its potential liability in 1984 gives rise to joint and several liability up to each policy's limits, for all damages resulting from a single occurrence over that period.

*See* Time Oil's Trigger of Coverage Memo at 1–2. Time Oil's motion seeks essentially two rulings: (1) that the CGL policies have been triggered, and (2) that all defendant insurance companies are jointly and severally liable, up to their limits, for all loss sustained by Time Oil.

### 1. Trigger of Coverage

Several Washington courts, beginning with *Gruol Construction Co. v. Ins. Co. of North America,* 11 Wash.App. 632, 524 P.2d 427 (1974), have addressed situations involving continuous damage. In *Gruol,* dry rot resulting from improper back filling during construction damaged a building's foundation. The building's owner sued the builder, who in turn claimed entitlement to insurance coverage under three successive insurance polices from the date of construction through the date upon which the damage was discovered. Noting that "the resulting damage was continuous," the appellate court concluded that coverage was properly imposed with respect to insurers whose policies were in effect during the progress of the dry rot even though the initial negligent act took place during coverage period of an earlier policy. *See*

*Gruol,* 11 Wash.App. at 633–36, 524 P.2d 427. Subsequent courts have uniformly followed this aspect of *Gruol. See, e.g., Villella v. Public Employees Mutual,* 106 Wash.2d 806, 725 P.2d 957 (1986); *Castle & Cooke, Inc. v. Great American Ins. Co.,* 42 Wash.App. 508, 711 P.2d 1108 (1986).

Based on these cases, the parties agree that Washington has adopted a "continuous trigger" or "continuous damage" theory. Yet, application of that theory in this case does not mandate that Time Oil's motion for summary judgment on the trigger of coverage issue should be granted. When facing nearly identical issues, the district court in *Boeing* explained:

> The *Gruol* case is good law for purposes of this case, but there are issues for trial. When did the property damage begin? Did the damage continue to occur during each policy period?

*See Boeing* Oral Decision at 12–13. These very same issues preclude summary judgment in this case. *Cf. supra* § II.C.4.

### 2. Joint and Several Liability

After deciding the coverage issue, the *Gruol* court went on to address the question of apportioning damages. The court stated:

> In a dispute between an insured who has sustained damages of a continuing nature, and the insurance carriers providing coverage, the burden of apportionment is on the carriers. The question turns upon whether the damage is joint and several. Here, the trial court properly found joint and several liability. The damage, though continuing over a period of time, constituted a single injury.

*See Gruol,* 11 Wash.App. at 637–38, 524 P.2d 427 (citations omitted). Relying on this holding, Time Oil seeks a ruling that all defendant insurance companies are jointly and severally liable for the whole of Time Oil's claim. *See* Time Oil's Trigger of Coverage Memo at 16–17.

Defendants oppose the motion, arguing that there is no factual record upon which this court could make a determination that specific policies have been triggered, much

less that liability is joint and several among specific policies. *See* Defendants' Memorandum in Opposition to Time Oil's Motion for Partial Summary Judgment on Trigger of Coverage at 14–19. The court agrees. This fact-intensive issue must be resolved at trial. *See, e.g., Boeing* Oral Decision at 13.

### H. *Time Oil's Motion Re: Notice, Waiver and Estoppel*

In this motion, Time Oil seeks a ruling that

> the notice received by defendants of Time Oil's claims under the subject policies was timely and adequate; that defendants were not prejudiced with respect to any alleged late notice; that defendants have waived or are estopped from asserting all defenses to coverage not specifically identified in their respective reservation-of-rights or denial-of-coverage letters ...; and that defendants Cigna and Northbrook have waived or are estopped from asserting any defenses because they failed to send letters raising any defenses whatsoever.

*See* Time Oil's Motion for Partial Summary Judgment on Notice, Waiver and Estoppel at 1–2.

#### 1. Notice

Each of the policies here at issue requires that notice of an occurrence or claim be given "as soon as practicable." *See, e.g.,* Time Oil Exhibit 1. Several defendants argue that Time Oil should have notified the insurance companies in May of 1982—as soon as they were apprised of the potential claim under the policies. *See* Defendants' Memorandum in Opposition to Time Oil's Motion for Partial Summary Judgment of Notice, Waiver and Estoppel ("Opposition Re: Notice, Waiver and Estoppel") at 9–10.[13]

As previously explained, to defeat liability defendants must show that they have suffered actual prejudice from Time Oil's alleged breach of the notice requirement.

*See supra* § II.E. Defendants, with the exception of Lloyd's, cite no evidence to support their general allegation that they suffered actual prejudice as a result of Time Oil's behavior. *See* Defendants' Opposition Re: Notice, Waiver and Estoppel at 10–11. Therefore, the court grants Time Oil's motion regarding the notice issue as to all defendants except Lloyd's.

#### 2. Waiver and Estoppel

Time Oil also argues that the insurers have waived and are estopped from asserting any coverage defense not communicated to Time Oil in a timely denial letter. In its Schedule of Waived Defenses, Time Oil asserts that certain defendants have waived one or many of the following defenses based on: occurrence; trigger of coverage; notice; property; as damage; owned damages; voluntary/property; contract; impairment of subrogation; no duty to defend non-lawsuits; and oil industry exclusion. *See* Time Oil's Exhibit B.

■■■ As a threshold matter, this court notes that the terms and coverage of a policy may not be expanded through application of the doctrines of waiver and estoppel. *See, e.g., Underwriters at Lloyd's v. Denali Seafoods, Inc.,* 729 F.Supp. 721, 726–27 (W.D.Wash.1989) (*citing Sullivan v. Great American Ins. Co.,* 23 Wash.App. 242, 247, 594 P.2d 454 (1979)); *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.,* 189 Wash. 329, 336, 65 P.2d 689 (1937). Accordingly, Time Oil's claim that defendants waived certain substantive defenses based on coverage and exclusionary clauses are without merit.[14]

■■■ Time Oil presents two types of arguments in support of its waiver/estoppel claim. First, Time Oil contends that defendants failed to comply with Wash.Admin. Code § 284–30–380, and therefore "absolutely waived" their policy defenses. The court rejects this argument. This regulation—regarding first-party property

---

13. Apparently, Cigna, Continental and Protective National do not intend to present such an argument. *See* Time Oil's Exhibit B (submitted at oral argument).

14. These non-waivable defenses certainly include defenses based on occurrence, trigger of coverage, and exclusionary clauses. The court invites further briefing regarding the other defenses asserted in this action. *See infra* at 1422.

claims—does not appear to apply to the situation presented in this case. *See, e.g., Buchanan v. Switzerland General Ins. Co.,* 76 Wash.2d 100, 106, 455 P.2d 344 (1969). Furthermore, Time Oil has cited no court which has held that failure to specifically comply with this regulation amounts to a waiver of all defenses.

Anticipating this conclusion, Time Oil also presents standard waiver and estoppel arguments. Waiver, either express or implied, is defined as the voluntary and intentional relinquishment or abandonment of a known right. It is unilateral in that it arises out of either action or nonaction on the part of the insurer or its duly authorized agents and rests upon circumstances indicating or inferring that the relinquishment of the right was voluntarily intended by the insurer with full knowledge of the facts pertaining thereto. *See, e.g., Buchanan,* 76 Wash.2d at 108, 455 P.2d 344; *Logan v. Northwest Ins. Co.,* 45 Wash.App. 95, 724 P.2d 1059 (1986). Estoppel, by contrast, refers to a preclusion from asserting a right by an insurer where it would be inequitable to permit the assertion. It arises by operation of law, and rests upon acts, statements or conduct on the part of the insurer or its agents which lead or induce the insured, in justifiable reliance thereupon, to act or forebear to act to his prejudice. *See, e.g., Buchanan,* 76 Wash.2d at 108, 455 P.2d 344; *Harbor Air v. Bd. of Tax Appeals,* 88 Wash.2d 359, 560 P.2d 1145 (1977).

As a general matter, waiver and estoppel claims implicate factual issues which are not appropriate for resolution on a motion for summary judgment. For instance, a waiver claim depends on whether the insurer or insured intended to relinquish a known right. *See, e.g., Saunders v. Lloyd's of London,* 113 Wash.2d 330, 340, 779 P.2d 249 (1989). Similarly, an estoppel claim depends upon the whether the insured suffered actual prejudice as a result of the insurers' behavior. *See, e.g., Bosko v. Pitts & Still, Inc.,* 75 Wash.2d 856, 454 P.2d 229 (1969). Here, given the submissions and arguments presented by defendants, the court concludes that the waiver and estoppel issues must be resolved at trial.

I. *Time Oil's Motion Re: Duty to Defend*

Each of the CGL policies issued to Time Oil includes a provision delineating the insurance company's duty to defend. Most primary insurers issued policies which stated:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated pay as damages because of:
> (a) bodily injury or
> (b) property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient.

*See* Primary Insurers' Memorandum in Opposition to Time Oil's Motion for Summary Judgment Re: Duty to Defend ("Opposition Re: Duty to Defend") at 2. Similarly, Lloyd's agreed:

> To settle or defend in the name and on behalf of the Assured all claims for damages against the Assured as a result of physical injury to or destruction of property of others arising from occurrences taking place during the term of the Certificate for which the Assured is or is alleged to be liable at law or by contract.

*See* Exhibits to Time Oil's Opposition to Defendants' Motion for Summary Judgment on Count III ("Exhibits Re: Count III"), Exhibit 1 at 102846.

Insurers who have reserved the right and duty to defend are obligated to "defend any suit in which the insured is *legally liable to pay* third parties in connection with risks covered by the policy." *See Felice v. St. Paul Fire & Marine Ins.,* 42 Wash.App. 352, 357, 711 P.2d 1066 (1985) (emphasis in original). Generally, there is a duty to defend an insured against any alleged claim that potentially falls within the scope of policy coverage. "The law is clear. An insurer's duty to defend

arises when a complaint against its insured is filed and is to be determined from the allegations of the complaint." *See Travelers Ins. v. Christian Alliance*, 32 Wash. App. 836, 839, 650 P.2d 250 (1982) (*citing National Steel Construction Co. v. National Union Fire Ins. Co.*, 14 Wash.App. 573, 575, 543 P.2d 642 (1975)). *See also E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 908, 726 P.2d 439 (1986).

Based on the primary insurers' refusal to investigate and defend against the governments' claims, Time Oil now moves for summary judgment alleging that the Count I defendants violated their respective duties to defend. In this motion, Time Oil seeks a ruling that these defendants breached their duties as of August 20, 1984. *See* Time Oil's Reply Re: Duty to Defend at 8. As damages, Time Oil seeks (1) costs and attorneys' fees in defending the action brought by the government entities; (2) the $8.5 million principal settlement, plus interest, entered between Time Oil and the government entities; and (3) Time Oil's attorneys' fees in this action. *See id.* at 9–13; Time Oil's Memorandum in Support of Motion for Summary Judgment Re: Duty to Defend at 16.

As a preliminary matter, the Count I defendants argue that Time Oil cannot establish any duty in this case. Conceding that the duty to defend is broader than its obligation to pay damages, they nonetheless claim that the government complaints did not include specific allegations which would satisfy each of the several requirements to trigger coverage under their policies. *See* Opposition Re: Duty to Defend at 7. In particular, the Count I defendants note that the complaints did not assert claims which indicated "(a) whether the property damage was the result of an occurrence, (b) when an occurrence, if any, happened, or (c) whether the claim was excluded by the [qualified] pollution exclusion." *See id.* at 10.

Defendants' suggestion that no duty existed because the complaints failed to include these specific allegations is unavailing. The complaints did include allegations, if proven, which were potentially covered by the CGL policies. *See, e.g., Denali*, 729 F.Supp. at 724–25. Therefore, consistent with the district court's ruling in *Boeing*, this court concludes that Time Oil has established the existence of a duty. *See Boeing* Oral Decision at 24.

Anticipating this conclusion, the Count I defendants also argue: (1) that their duties did not arise until the government entities filed their lawsuit against Time Oil; (2) that Time Oil never properly tendered its defense to the insurers; and (3) that damages are limited to defense costs. *See* Opposition Re: Duty to Defend at 16–22.

■ First, the CGL policies note that the primary insurers would defend any "suit." [15] The count I defendants argue that the EPA letters to Time Oil do not mark the commencement of a "suit" for purposes of their duties to defend. In *Boeing*, the district court recently concluded that "in Washington the appellate courts would consider the [EPA] PRP letter to be a suit." *See Boeing* Oral Decision at 22–23. Consistent with that ruling, this court concludes that the EPA's CERCLA claim in July 1984—more than two years after the EPA had issued its PRP letter—constitutes a "suit" sufficient to trigger the primary insurers' duties to defend.

Second, courts and commentators agree that the duty to defend only arises after the insured tenders the defense. *See, e.g., Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1183 (7th Cir.1980); 1 G. Couch, *Insurance* § 50:35. Defendants argue that Time Oil never properly tendered the defense of the EPA action or subsequent lawsuits. The court disagrees. Time Oil's August 1984 letter constituted sufficient notice of the of the pending "suit" to trigger the insurers' duties to defend. As to Lloyd's, however, the court concludes that Time Oil did not properly tender the defense until January 1988. *See supra* § II.E.

15. Somewhat more broadly, Lloyd's agreed to defend all legal "claims for damages." *See* Time

Oil's Exhibits Re: Count III, Exhibit 1 at 102846.

■ Third, courts and commentators agree that damages for a refusal to defend include costs and reasonable attorneys' fees incurred by the insured in defending itself, plus consequential damages stemming from the insured's breach. *See, e.g., Denali*, 729 F.Supp. at 725 (citing A. Windt, *Insurance Claims and Disputes* § 4.31, at 202–03; Appleman, *Insurance Law and Practice* § 4691, at 240). Time Oil argues that an insurer company which breaches the duty to defend is also liable for any potential settlement or judgment, up to the policy limits, regardless of whether or not coverage truly exists for the claim. Defendants strenuously contest this contention.

The court is not persuaded by Time Oil's position. As explained in *Denali*, Washington cases do not support an award of such enhanced damages. *See Denali*, 729 F.Supp. at 724–25. "[The] breach should not provide for a 'rewriting' of the policy contract to award insured more than their purchased coverage." *See id.* at 725. As damages for the Count I defendants' breach of their duties to defend, Time Oil is entitled to (1) reasonable attorneys' fees stemming from the action brought by the government entities, and (2) consequential damages, if any, incurred as a result of the breach.[16]

### J. *Time Oil's Motion Re: Duty to Indemnify*

Finally, Time Oil presents a general motion seeking summary judgment on all coverage issues not addressed in its other motions for partial summary judgment.

Time Oil's motion for summary judgment on Count II states a simple proposition: if Time Oil's motions for partial summary judgment are granted and if, with regard to the handful of defendants' unbriefed (sic) "boilerplate" defenses, the defendants fail to produce any evidence that would justify a jury verdict in their favor, then Time Oil is entitled to judgment on Count II.

*See* Time Oil's Reply Brief Re: Count II—Duty to Indemnify at 1. Given that the court has denied most of Time Oil's motions for partial summary judgment regarding coverage issues, this motion also must be denied.

THEREFORE, the court ORDERS as follows:

(1) Defendants' motion to strike a portion of the Declaration of Raymond Abendroth is GRANTED.

(2) Defendants' motion to strike the Declaration of Lyle Silka is DENIED.

(3) U.S. Fire's, Lloyd's and Harbor's motion for summary judgment re: Oil Industries Limitation Endorsement is DENIED.

(4) PEIC's motion for summary judgment re: Oil Industry Limitation Endorsement is STRICKEN AS MOOT.

(5) ICSOP's and U.S. Fire's motion for summary judgment re: Contamination Exclusion is GRANTED.

(6) Central National's motion for summary judgment re: Cleanup Exclusion is GRANTED.

(7) Royal Indemnity's and National Union's motion for summary judgment re: Underground Property Exclusion is GRANTED.

(8) Defendants' motion for summary judgment re: no occurrence after 1974 is DENIED.

(9) Defendants' motion for summary judgment re: no occurrence after 1982 PRP letters is GRANTED.

(10) Lloyd's motion for summary judgment re: late notice is DENIED.

(11) Time Oil's motion for summary judgment re: occurrence is DENIED.

(12) Time Oil's motion for summary judgment re: trigger of coverage is DENIED.

(13) Time Oil's motion for summary judgment re: notice is GRANTED as to all defendants except Lloyd's.

---

**16.** The court invites further briefing as to the appropriate method for proceeding with the damage issue. *See infra* at 1422.

**1422**

(14) Time Oil's motion for summary judgment re: waiver and estoppel is DENIED.

(15) Time Oil's motion for summary judgment re: duty to defend is GRANTED except as to Time Oil's request for damages.

(16) Time Oil's motion for summary judgment re: duty to indemnify is DENIED.

(17) This Order raises two issues which cannot now be decided: (a) the proper characterization of certain defenses raised by the insurers, *see supra* note 14; and (b) the appropriate method for determining the damages flowing from the insurers' breach of their duties to defend, *see supra* note 16. The court directs the parties to promptly meet to discuss these issues, and to establish a briefing schedule if necessary. The parties shall notify the court, no later than June 1, 1990, as to the status of these discussions.